995 P.2d 830

**Maichelle Berniece BROWNSON, Formerly known as Maichelle Allen, Plaintiff–Counterdefendant–Appellant,**

v.

**Mark Lewis ALLEN, Defendant–Counterclaimant–Respondent.**

No. 24677.

Supreme Court of Idaho,
Boise, November 1999 Term.

March 2, 2000.

Bauer & French, Boise, for appellant. Charles B. Bauer argued.

Fuller & Williams, Twin Falls, for respondent. Seth Craig Platts argued.

SCHROEDER, Justice.

This is a child custody case in which Maichelle Brownson (Brownson) appeals the order of the magistrate restoring primary custody of her son, Shane, to Mark Allen (Allen), Shane's father.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

Allen and Brownson were married on July 1, 1982. Shane was born on March 7, 1984. Allen and Brownson divorced on December 5, 1986. Pursuant to the divorce decree, the parties were awarded joint legal custody of Shane with Allen being designated as the primary physical custodian.

Shane developed problems in the spring of 1996 due to the tenuous situation between his parents. According to Brownson, when Shane visited her in Winnemuca, Nevada, during the summer of 1996, he requested to remain with her and enroll in school for the 1996–1997 term. Brownson did not return Shane to Allen at the end of the summer. Allen filed an Order to Show Cause, seeking to hold Brownson in contempt for failing to return Shane. Brownson moved to modify the divorce decree to award her physical custody. The cross-motions were resolved by a stipulated order providing (1) that temporary physical custody would rest with Brownson, (2) that Dr. Richard Smith would conduct a custodial evaluation and file a written report with the court, and (3) both Brownson and Allen must refrain from any demeaning or denigrating comments about each other.

Five months later, in January of 1997, Brownson filed a motion for homestudy. The order which resulted from this motion dictated that (1) the parties share transportation of Shane, (2) neither party consume or use any illegal substances, (3) Dr. Eric Jones would consult and make recommendations to the parties on an ongoing basis concerning visitation issues, and (4) the cost of Dr. Jones' services would be split by Brownson and Allen.

On March 17, 1997, a stipulated order was filed which modified the divorce decree. Brownson and Allen retained joint legal custody of Shane, but Brownson was designated as the primary residential custodian. The order designated a half-way point for exchanges for visitation and continued the appointment of Dr. Jones as a consultant to Shane's parents.

On May 13, 1997, Dr. Jones addressed a letter to the court, indicating that he did not believe that forcing Shane to remain in Idaho to visit Allen for the summer was in Shane's best interest. Brownson moved to modify the order for summer visitation to permit Shane to spend the summer in Nevada with her. The court ruled that Shane would remain in Idaho with Allen on an open-ended basis. Allen and Shane were to meet with Dr. Jones to determine Shane's length of stay with Allen.

Shane met with Dr. Jones and decided that he wanted to remain with his father for the duration of the 1997 summer visitation. Shane told Dr. Jones that he changed his mind because he became reinvolved socially with his friends in Idaho, he established a rapport with his teachers, and he became active in extracurricular activities and sports. Dr. Jones formed the opinion that it was in Shane's best interests for him to remain in Allen's residential custody.

Allen filed a Motion for Modification to have Shane continue to reside in Idaho. Brownson filed a Motion for Contempt because Allen refused to return Shane after the summer visitation period had ended. Following trial, the magistrate restored custody to Allen and dismissed the contempt action. Brownson appealed, and this Court granted a direct appeal from the magistrate's decision.

## II.

## STANDARD OF REVIEW

In awarding custody, the welfare and best interests of children are of paramount importance, and the court is required to provide for them as it deems necessary or proper to achieve this end. I.C. § 32–717; *Schmitt v. Schmitt*, 83 Idaho 300, 305, 362 P.2d 884, 887 (1961). Once a custodial order

is entered, the party seeking to modify it must first demonstrate that a material and substantial change of circumstances has occurred since the entry of the last custodial order. *Osteraas v. Osteraas*, 124 Idaho 350, 353, 859 P.2d 948, 951 (1993). When reviewing an exercise of discretion the Court inquires: (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason. *Id.*

■ This Court will not attempt to substitute its judgment and discretion for that of the trial court, except in cases where the record reflects a clear abuse of discretion. *Levin v. Levin*, 122 Idaho 583, 586, 836 P.2d 529, 532 (1992); *Biggers v. Biggers*, 103 Idaho 550, 555, 650 P.2d 692, 697 (1982). An abuse of discretion occurs where there is insufficient evidence to support the court's finding regarding the best interest of the child. *Roeh v. Roeh*, 113 Idaho 557, 558, 746 P.2d 1016, 1017 (Ct.App.1987). The party seeking modification has the burden of justifying a change in custody, and although the threshold question is whether a permanent and substantial change in the circumstances has occurred, the paramount concern is the best interest of the child. *Biggers*, 103 Idaho 550, 650 P.2d 692; *Cope v. Cope*, 98 Idaho 920, 576 P.2d 201 (1978).

## III.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN APPLYING THE FACTORS IN IDAHO CODE § 32–717.

Idaho Code § 32–717 provides a directive for the trial court to determine the best interests of the children when making a custody decision. *Milliron v. Milliron*, 116 Idaho 253, 775 P.2d 145 (Ct.App.1989). The statute sets forth relevant, non-exhaustive factors, to aid in making its determination. *Id.; see also Dymitro v. Dymitro*, 129 Idaho 527, 927 P.2d 917 (Ct.App.1996). Idaho Code § 32–717 states in relevant part:

**Custody of Children—Best Interest.**

A. In an action for divorce the court may, before and after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper in the best interests of the children. The court shall consider all relevant factors, which may include:

(1) The wishes of the child's parent or parents as to his or her custody;

(2) The wishes of the child as to his or her custodian;

(3) The interaction and interrelationship of the child with his or her parent or parents, and his or her siblings;

(4) The child's adjustment to his or her home, school, and community;

(5) The mental and physical health and integrity of all individuals involved;

(6) The need to promote continuity and stability in the life of the child; and

(7) Domestic violence as defined in Idaho Code § 39–6303 whether or not in the presence of the child.

In conjunction with Idaho Code § 32–717, the child's well-being and best interest are important in determining custody. *Roeh*, 113 Idaho at 558, 746 P.2d at 1017.

■ Idaho Code § 32–717 gives a judge wide discretion regarding custody decisions, subject to some restrictions. ("The court shall consider all relevant factors, whereas the court must avoid considering irrelevant factors." *Id.;* I.C. § 32–717.) The trial court must avoid assigning too much weight to any one particular factor in determining the custody of the children. *Moye v. Moye*, 102 Idaho 170, 172, 627 P.2d 799, 801 (1981).

■ Brownson argues that the trial court failed to properly apply the factors listed by Idaho Code § 32–717. She contends that the award of custody to Allen was an abuse of discretion. In particular, she argues that the trial court gave undue weight to Shane's wishes.

The trial court made detailed findings on the child's wishes, the adjustment to home, school, and community, the continuity and stability of the child, and the physical and mental health of all individuals involved. Each relevant factor was discussed along

with the pertinent conflicting evidence presented by Allen and Brownson. The trial court did not abuse its discretion in applying the factors set forth in I.C. § 32–717.

## IV.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN FINDING A MATERIAL AND SUBSTANTIAL CHANGE IN CIRCUMSTANCES TO WARRANT A MODIFICATION OF CHILD CUSTODY.

Brownson asserts that the trial court erred in determining that a substantial and material change occurred. The trial court looked to three findings of fact to justify a determination that a material change of circumstance had occurred. The trial court found that Shane had changed his mind concerning where he desired to reside but recognized that this reason, standing alone, was not sufficient to support a finding of a material change, citing *Strain v. Strain*, 95 Idaho 904, 523 P.2d 36 (1974). In *Strain*, this Court deemed it an abuse of discretion to change custody solely upon the child's desire to live with one parent.

Unlike the Court in *Strain*, the trial court relied on two other specific findings to support the conclusion that a material change of circumstances had occurred: (1) Shane's academic performance suffered while he was living with Brownson; and (2) Shane was under constant strain and became anxiety-ridden while residing in Nevada. The trial court's determination that there was a material change of circumstances warranting the change in custody in Shane's best interest is supported by substantial, competent evidence. Therefore, the trial court did not abuse its discretion in restoring custody to Allen.

## V.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY NOT FINDING MARK ALLEN IN CONTEMPT FOR FAILURE TO RETURN THE MINOR CHILD AT THE END OF THE SUMMER VISITATION.

An order modifying Allen and Brownson's decree of divorce was entered on February 16, 1997. This provided in part:

The parties will continue to consult with Dr. Eric Jones who has been appointed by the court to perform duties of a mediator in this case, and to be available to Shane and who can act on Shane's behalf with the parties. The parties will work through Dr. Jones to develop and maintain communication for Shane's benefit. The appointment of Dr. Jones as entered by this Court in its order on February 5, 1997, shall continue under this order and is not superceded by this order. The parties shall submit any future disputes regarding visitation, scheduling, or other concerns regarding the minor child in the first instance to Dr. Jones as the court-appointed mediator, as recommended in the homestudy dated November 22, 1996."

Brownson contends that Allen should be held in contempt because he violated the court ordered modification of custody by not returning Shane to Brownson at the end of the summer visitation. Allen claims that an agreement was made during a mediation session with Dr. Jones in regard to Shane's custody and visitation. Brownson maintains that I.R.C.P. 16 provides that a mediated agreement does not bind the parties and will not be effective until it has been reduced to writing, signed by the parties, and submitted to the court.

Dr. Jones' testimony is as follows:

Q: When was your mediation with these parties?

A: It was near the latter part of July. I can tell you the exact date here, excuse me it was July 15, 1997.

Q: You stated your recommendation was acceptable to both parties?

A: Yes

Q: Can you be specific on what the parties had agreed to?

A: What—in terms of visitation? In terms of Shane staying?

Q: Custody and visitation.

A: Custody and visitation.

Q: And...?

A: That [Shane] would remain with Mark and that visitation would be monthly with [Maichelle], phone contact would be regular. We had discussed, Shane had shared his wishes that monthly visitation be one of those months when [Maichelle] is up here. [Shane] felt that she does travel to see her family up here [in Idaho] frequently and he would prefer that to avoid the ten-hour drive back and forth.

And I also encouraged them to continue as they did in the office that night because it was very positive experience.

Q: Is there any doubts in your mind that [Maichelle] made this agreement?

A: No there is not.

Q: Is there anything that you could have done, more that night [in relation to the mediation], to ensure that an agreement had been reached?

A: The only thing I could have done different to accommodate what I perceived as an agreement by both parties to these recommendations was to have it typed at the time and have them sign it before leaving the office. That was not done.

The trial court determined that an agreement had been reached between Brownson and Allen, although it had not been reduced to writing. The trial court decided that a finding of contempt was not warranted under these circumstances. This determination is supported by the record and was not an abuse of discretion.

## VI.

### CONCLUSION

The decision of the trial court is affirmed. Mark Allen is awarded costs. No attorney fees are allowed.

Chief Justice TROUT, and Justices SILAK, WALTERS, and KIDWELL, concur.