50 P.3d 453

**Justin KING, Plaintiff–Respondent,**

v.

**Melissa Ann KING, Defendant–Appellant.**

**No. 27271.**

Supreme Court of Idaho,
Boise, May 2002 Term.

June 18, 2002.

Marc J. Weinpel, Idaho Falls, for appellant.

Grover & Archibald, Rigby, for respondent. Blair J. Grover argued.

EISMANN, Justice.

In this appeal of the child custody provisions of a divorce decree, we affirm the judgment of the magistrate judge.

## I. FACTS AND PROCEDURAL HISTORY

The respondent Justin King (Justin) and the appellant Melissa King (Melissa) were married on July 16, 1994. They have one child from the marriage named Megan, who was born on May 5, 1995, in Idaho Falls. During the latter three years of their marriage, Justin and Melissa resided in Jefferson County, Idaho, on Mountain River Ranch, which is owned by Justin's father.

Justin and Melissa had a dysfunctional relationship. On May 3 or 4, 1999, at Melissa's request, her mother came to Idaho, picked up Megan without Justin's knowledge or consent, and flew with Megan to Michigan, where Melissa's family lived. Melissa then drove to Michigan to join them.

On May 6, 1999, Justin filed a complaint for divorce and documents seeking temporary custody of Megan. The magistrate who was initially assigned to this case[1] entered an *ex parte* order granting temporary custody of Megan to Justin and setting a time and date for a hearing on temporary custody. Melissa attempted to secure a temporary custody order in Michigan, but the Michigan court ultimately deferred to the custody order previously entered in Idaho. Megan was then returned to Idaho.

On May 27, 1999, the newly-assigned magistrate held a temporary custody hearing. Both parties presented evidence, and the next day the magistrate issued a memorandum decision and order granting Justin primary physical custody of Megan during the pendency of the divorce proceedings.

This case was tried on August 19 and 20, 1999. By stipulation of the parties, the magistrate also considered the evidence presented during the hearing on temporary custody and the deposition testimony of Dr. Grace Cobiella, Justin's treating psychiatrist. At the conclusion of the trial, the magistrate took the matter under advisement.

On August 30, 1999, Justin's counsel submitted to the magistrate proposed findings of fact and conclusions of law. On October 4, 1999, the magistrate issued a memorandum decision in which he made various findings and concluded, among other things, that it was in Megan's best interests for Justin to have primary physical custody of her. The memorandum decision ended with a request that Justin's counsel prepare "further proposed Findings of Fact, Conclusions of Law and Judgment, including standard language relating to medical insurance." There is nothing in the record indicating that Justin's counsel submitted additional proposed findings of fact and conclusions of law. Melissa's counsel also submitted proposed findings of fact and conclusions of law that were dated August 31, 1999, but were not filed until October 18, 1999.

On January 21, 2000, the magistrate issued findings of fact and conclusions of law and a judgment. The magistrate's findings of fact adopted verbatim most of the proposed findings submitted by Justin's counsel on August 30, 1999. With respect to child custody, the judgment awarded both parties joint legal custody of Megan, and it awarded Justin primary physical custody. It provided that if the parties did not agree otherwise, Justin would have physical custody eighty percent of the time and that Melissa would have physical custody twenty percent of the time. Because Melissa had moved to Michigan, the judgment ordered that changes in physical custody would occur every ninety days, with Melissa paying the travel expenses. It also provided that she could have physical custody up to forty-five additional days during the months of June, July, and August of each year. Neither party was required to pay child support to the other.

Melissa appealed the child custody provisions of the judgment to the district court. Her challenge to the magistrate's findings included his adoption of findings of fact submitted by Justin's counsel. On January 4, 2001, the district court issued its decision

---

1. On May 17, 1999, Melissa disqualified without cause the magistrate who was initially assigned to this case. Judge Carlson was then assigned to the case on May 21, 1999.

affirming the judgment of the magistrate. Melissa then appealed to this Court.

## II. ANALYSIS

■ When reviewing a case decided in the magistrate division that has been appealed to the district court, we review the magistrate's decision independently of, but with due regard for, the district court's intermediate appellate decision. *Brinkmeyer v. Brinkmeyer,* 135 Idaho 596, 21 P.3d 918 (2001).

### A. Did the magistrate err by adopting the findings of fact and conclusions of law prepared by Justin's counsel?

Melissa argues that the magistrate judge erred by adopting verbatim proposed findings of fact submitted by Justin's counsel, a practice this Court has previously criticized. In *Compton v. Gilmore,* 98 Idaho 190, 560 P.2d 861 (1977), this Court stressed that under Rule 52 of the Idaho Rules of Civil Procedure, the trial court has the duty to find the facts specially; that the trial court's obligation under Rule 52 requires care on the part of the trial court in its consideration and adjudication of the facts; that when doing so the trial court must exercise its independent judgment rather than merely adopting the findings proposed by one party; and that if the trial court desires assistance from counsel, it should request proposed findings from all parties and then use them in drafting the court's findings of fact. We reiterated these admonitions in *Cheney v. Jemmett,* 107 Idaho 829, 831, 693 P.2d 1031, 1033 (1984).

■ When drafting the findings of fact issued on January 20, 2000, the magistrate judge did not adopt verbatim all of the proposed findings of fact submitted by Justin's counsel. The magistrate's findings of fact contain thirty-six numbered paragraphs regarding child custody. Comparing the proposed findings [2] with the magistrate's findings, twenty of those paragraphs were adopted verbatim from the proposed findings. An additional nine paragraphs were adopted from the proposed findings, but were modified.

The differences between the proposed findings submitted by Justin's counsel and the magistrate's findings show that the magistrate did not simply adopt verbatim the proposed findings. The magistrate obviously reviewed the proposed findings, rejected some, modified some, and adopted others, albeit the majority, verbatim. The record shows that the magistrate exercised independent judgment when deciding which of the proposed findings to adopt. Although the magistrate requested proposed findings of fact only from Justin's counsel, he did not commit reversible error by the manner in which he prepared his findings of fact. *State v. Harmon,* 131 Idaho 80, 952 P.2d 402 (1998).

### B. Are findings of fact made by the magistrate supported by substantial and competent evidence?

■ In connection with her challenge to the manner in which the magistrate produced the findings of fact, Melissa also argues that three of the findings are not supported by substantial and competent evidence. A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous. *Bramwell v. South Rigby Canal Co.,* 136 Idaho 648, 39 P.3d 588 (2001); IDAHO R. CIV. P. 52(a). When deciding whether findings of fact are clearly erroneous, this Court does not substitute its view of the facts for that of the trial court. *Bramwell v. South Rigby Canal Co.,* 136 Idaho 648, 39 P.3d 588 (2001). It is the province of the trial court to weigh conflicting evidence and to judge the credibility of witnesses. *Rowley v. Fuhrman,* 133 Idaho 105, 982 P.2d 940 (1999). On appeal, this Court examines the record to see if challenged findings of fact are supported by substantial and competent evidence. *Id.* Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven. *Bramwell v. South Rigby Canal Co.,* 136 Idaho 648, 39 P.3d 588 (2001).

---

2. The proposed findings in the record are missing one page, so it is possible that the magistrate adopted additional proposed findings, either verbatim or in a modified form.

■ Melissa first challenges the magistrate's findings regarding the lack of cleanliness of the marital home. The magistrate made the following findings:

11. Melissa was a victim of abuse when residing with her mother and step-father and has indicated she does not like being at home. She provides little structure for Megan, such as regular bed and meal times. Until Melissa moved from the home in early May, it was always very dirty: beds were not made, the sink was full of dirty dishes, the laundry room full of dirty clothes, and the floors not cleaned.

12. Since the temporary custody hearing May 28, Hunt [a rehabilitation counselor who testified as an expert witness] has been at the parties [sic] Mountain River Ranch home at least weekly and was there on three unannounced visits. It is totally different. Justin, with the assistance of Julie [Justin's sister], has thoroughly cleaned it. On every visit, including those unannounced, it was clean and tidy. The dishes were done, cabinets clean, beds made, and laundry washed. At times it was still folded in the laundry room, but there were not stacks of dirty clothes. On several visits, when Megan was present, she appeared happy and contented and continued appropriate normal and natural expressions of affection for Justin, and he for her. It was and continues to be Hunt's opinion that Justin is the parent better able to provide for Megan's welfare.

. . . .

22. Since the temporary hearing, Justin has provided custodial parental care for Megan. He cooks, cleans and does the laundry. He helps her bathe, combs her hair, reads her stories, and puts her to bed. Since the hearing, the cleanliness and orderliness of the home is totally different: It is now clean and neat, unlike before where it was dirty and disorderly.

. . . .

34. Melissa is not a good housekeeper. The house at Mountain River Ranch was filthy, dirty dishes, dirty laundry, unmade beds, etc. The carpet became so dirty it will need to be replaced.

Melissa challenges the above findings not for their accuracy, but for the implication that she was solely responsible for keeping the residence clean. She argues that Justin also bears responsibility for the lack of cleanliness in the marital home. The magistrate did not find that Justin had no responsibility to maintain the home when he and Melissa resided there. The magistrate merely found that the home was better maintained when Justin and Megan were living there than it was when Melissa was also living there. Those findings are supported by substantial and competent evidence.

■ Melissa next challenges the finding that Justin's schizophrenia is controlled with medication and counseling. Melissa points to past incidents that she contends show that Justin's schizophrenia is not controlled adequately by his medications. Dr. Cobiella, Justin's treating psychiatrist, testified that she first saw Justin on August 9, 1993. At that time, she diagnosed his condition as bipolar disorder manic type in partial remission. Since then, she has seen him one to four times a month, and the current working diagnosis is schizophrenia with paranoid type. Dr. Cobiella testified that Justin's condition worsened after he married Melissa, resulting in a period of hospitalization; that his condition improved tremendously after he and Melissa separated; and that she expects his condition to continue to improve. She also stated that he had previously had problems due to not taking his medications as prescribed, but for a long time he has been compliant and very stable. She has no concerns about Justin's parenting abilities, and in her opinion he is able to provide for Megan's physical, emotional, and social needs. The magistrate's findings in this regard are supported by substantial and competent evidence.

■ Finally, Melissa challenges the magistrate's finding that Justin was not a habitual perpetrator of domestic violence. Idaho Code § 32–717B(5) provides a presumption that joint custody is not in the best interests of a minor child if one of the parents is found to be a habitual perpetrator of domestic violence. There was evidence that both parties initiated violence against the other, with Jus-

tin initiating violence against Melissa more often than she did against him. She also testified, however, that the incidents of violence varied, depending upon whether Justin was taking his medications. Dr. Cobiella testified that before Justin began taking Dyprexam, the incidents of violence resulted from his mental illness. Considering the evidence in the record, the magistrate's finding that Justin was not a habitual perpetrator of domestic violence is supported by substantial and competent evidence.

## C. Did the magistrate abuse its discretion in awarding Justin primary physical custody of Megan?

 Melissa argues that the magistrate abused his discretion when applying the factors listed in Idaho Code § 32–717.[3] That statute sets forth relevant, non-exhaustive factors to aid in making a child custody determination. *Brownson v. Allen,* 134 Idaho 60, 995 P.2d 830 (2000). The trial judge

has wide discretion when weighing these and other relevant factors. *Id.*

 Melissa argues that the magistrate should have weighed Justin's mental condition more heavily against awarding him primary physical custody because he will require medications for the rest of his life to control his condition. She argues that, in contrast, there was no evidence that she suffers from a mental condition. The magistrate considered the evidence in the record and found that Justin's mental illness does not affect his parenting ability. That finding is supported by substantial and competent evidence. Therefore, the magistrate did not abuse his discretion in failing to weigh Justin's mental illness against awarding him primary physical custody.

 Melissa also argues that the magistrate did not properly apply IDAHO CODE § 32–717B.[4] She argues that there will be

3. That statute provides as follows:

**32–717. Custody of children—Best interest.**—A. In an action for divorce the court may, before and after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper in the best interests of the children. The court shall consider all relevant factors which may include:

1. The wishes of the child's parent or parents as to his or her custody;
2. The wishes of the child as to his or her custodian;
3. The interaction and interrelationship of the child with his or her parent or parents, and his or her siblings;
4. The child's adjustment to his or her home, school, and community;
5. The mental and physical health and integrity of all individuals involved;
6. The need to promote continuity and stability in the life of the child; and
7. Domestic violence as defined in section 39–6303, Idaho Code, whether or not in the presence of the child.

B. In any case where the child is actually residing with a grandparent in a stable relationship, the court may recognize the grandparent as having the same standing as a parent for evaluating what custody arrangements are in the best interests of the child.

4. The statute provides as follows:

**32–717B. Joint custody.**—(1) "Joint custody" means an order awarding custody of the minor child or children to both parents and providing that physical custody shall be shared by the parents in such a way as to assure the

child or children of frequent and continuing contact with both parents. The court may award either joint physical custody or joint legal custody or both as between the parents or parties as the court determines is for the best interests of the minor child or children. If the court declines to enter an order awarding joint custody, the court shall state in its decision the reasons for denial of an award of joint custody.

(2) "Joint physical custody" means an order awarding each of the parents significant periods of time in which a child resides with or is under the care and supervision of each of the parents or parties.

Joint physical custody shall be shared by the parents in such a way to assure the child a frequent and continuing contact with both parents but does not necessarily mean the child's time with each parent should be exactly the same in length nor does it necessarily mean the child should be alternating back and forth over certain periods of time between each parent.

The actual amount of time with each parent shall be determined by the court.

(3) "Joint legal custody" means a judicial determination that the parents or parties are required to share the decision-making rights, responsibilities and authority relating to the health, education and general welfare of a child or children.

(4) Except as provided in subsection (5), of this section, absent a preponderance of the evidence to the contrary, there shall be a presumption that joint custody is in the best interests of a minor child or children.

(5) There shall be a presumption that joint custody is not in the best interests of a minor

significant periods of time during which she will not have contact with Megan.

■ The statute provides that there is a presumption that joint custody is in the best interests of a minor child. " 'Joint custody' means an order awarding custody of the minor child ... to both parents and providing that physical custody shall be shared by the parents in such a way as to assure the child ... of frequent and continuing contact with both parents." IDAHO CODE § 32–717B(1) (1996). Joint physical custody does not mean that the parents have physical custody of the child for equal periods of time, nor does it mean that the child should alternate back and forth between the parents for specified periods of time. IDAHO CODE § 32–717B(2) (1996). The actual amount of time the child spends with each parent is to be determined by the trial court. *Id.*

■ In this case, Melissa chose to move from Idaho to Michigan. The practical effect of her move is to limit the amount of time that she can spend with Megan. The magistrate implicitly found that it would not be in Megan's best interests to spend six months each year with each parent. It was therefore necessary to award primary physical custody [5] to one parent. Each parent has strengths and weaknesses, and it would do no good to recount all of the allegations of misconduct they made against each other. The magistrate had to decide which parent Megan would be with most of the time. Except in cases where a parent is unfit, those decisions are never easy. The magistrate considered all relevant factors and determined that the scales tipped in favor of awarding primary physical custody of Megan to Justin. That determination does not mean that Melissa is not a fit parent, nor does it mean that Justin is a perfect parent. It simply means that, considering all relevant

factors, the magistrate concluded that it was in Megan's best interests for Justin to have primary physical custody. The magistrate also ordered that if the parties could not agree otherwise, Justin should have physical custody approximately eighty percent of the time. An abuse of discretion occurs when there is not sufficient evidence to support the court's finding regarding the best interests of the child. *Brownson v. Allen*, 134 Idaho 60, 995 P.2d 830 (2000). Melissa has not shown that the magistrate abused his discretion in awarding physical custody.

**D. Is either party entitled to attorney fees on appeal?**

■ Melissa requests attorney fees on appeal pursuant to Idaho Code §§ 32–704(3) and 12–121. Because Melissa is not the prevailing party, she is not entitled to an award of attorney fees under § 12–121. *Brinkmeyer v. Brinkmeyer*, 135 Idaho 596, 21 P.3d 918 (2001). With respect to her request for an award of attorney fees under § 32–704(3), there is nothing in the record indicating that Melissa presented a request for an award of attorney fees under that statute to either the magistrate judge or the district judge in order to pursue this appeal, nor did she provide any information to this Court to support such request. We therefore will not award her attorney fees under Idaho Code § 32–704(3). *Browning v. Browning*, 136 Idaho 691, 39 P.3d 631 (2001).

■ Justin likewise seeks attorney fees pursuant to Idaho Code § 12–121. Attorney fees under § 12–121 will be awarded to the prevailing party on appeal when this Court is left with the abiding belief that the appeal was brought or pursued frivolously, unreasonably or without foundation. *Sacred Heart Med. Ctr. v. Nez Perce County*, 136 Idaho 448, 35 P.3d 265 (2001). Melissa's argument that Justin should have been found

---

child if one (1) of the parents is found by the court to be a habitual perpetrator of domestic violence as defined in section 39–6303, Idaho Code.

5. Because trial courts often do not award both parents equal periods of physical custody, the parent who has the child the greater amount of time is referred to as having "primary physical custody" of the child, even though that term is

not included in Idaho Code § 32–717B. Because "joint physical custody" does not require equal periods of time with both parents, IDAHO CODE § 32–717B(2) (1996), awarding "primary physical custody" to one parent complies with the statute as long as each of the parents has significant periods of time in which the child resides with or is under the care and supervision of that parent.

446

to be a habitual perpetrator of domestic violence under Idaho Code § 32–717B(5), a statute this Court has not previously addressed, was not frivolous, unreasonable, or without foundation. Therefore, we decline to award Justin attorney fees on appeal.

## III. CONCLUSION

We uphold the judgment of the magistrate judge awarding primary physical custody of Megan to Justin. We award costs on appeal, but not attorney fees, to Justin.

Chief Justice TROUT, and Justices SCHROEDER, WALTERS and KIDWELL concur.