64 P.3d 327

**Kimberly ROBERTS, Plaintiff–Appellant,**

v.

**Larry J. ROBERTS, Defendant–Respondent.**

**No. 27738.**

Supreme Court of Idaho,
Twin Falls, November 2002, Term.

Feb. 10, 2003.

**402**

Cosho, Humphrey, Greener & Welsh, Boise, for appellant. Daniel Glynn argued.

Parsons, Smith & Stone, Burley, for respondent. William Parsons argued.

TROUT, Chief Justice.

This is a permissive appeal to this Court directly from a magistrate judge's decision to increase a father's visitation and prohibit a mother from relocating with the children outside of Cassia and Minidoka Counties to Boise, Idaho.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Larry Roberts (Larry) and Kimberly Roberts (Kimberly) were married in 1985 and had two children prior to divorcing in 1996. As part of the divorce proceedings, the parties signed a "Custody and Property Settlement Agreement" (Custody Agreement) and a "Parenting Plan."

In the Custody Agreement, the parties agreed to share joint legal custody of the children with Kimberly receiving primary physical custody subject to Larry's rights as set forth in the Parenting Plan. The Custody Agreement also contains the following limitation on relocation: "Wife shall reside in Cassia or Minidoka County and will not permanently remove the children from either of said counties without the written consent of Husband or prior court order."

The Parenting Plan provides Larry with visitation rights every other weekend, four weeks over the summer vacation, and alternating holidays. In addition, through various provisions in the Parenting Plan, the parties agreed they would continue to have on-going contact with the children to optimize the children's relationship with both parents. In terms of relocation, the Parenting Plan provides:

> We each agree to communicate with the other parent prior to moving from our current residence because a move could affect the nature of this parenting arrangement. In case of a move, our communication would focus on how we can still be involved as parents in a way that would meet the needs of the children.

On March 16, 2000, almost four years after the divorce, Larry filed a Petition to Modify the child support and custody schedule. Larry sought greater visitation with the children because he wanted to take a more active role in their school routine and daily activities, his workload had adjusted such that he had more time to spend with the children, and the children were now older, more independent, and more able to spend time away from their mother. On October 17, 2000, Kimberly filed a Counterpetition to Modify the judgment and decree of divorce to allow her to move to Ada County for employment purposes. Neither party requested a change of custody.

On April 11, 2001, the parties participated in a mediation with the magistrate judge assigned to the case. When mediation failed to produce a settlement, the parties agreed to submit a set of stipulated facts to the magistrate to avoid an adversarial evidentiary hearing. The stipulated facts include:

Kimberly has been involved in a relationship with Ed Davis (Davis) since 1997, and is presently engaged to marry him; Davis is on probation for embezzlement; and Kimberly plans to move to Boise with Davis. In addition, the parties stipulated the court could use the written custody evaluation and deposition of Dr. Atkin to help make its decision.

Based on the stipulated facts, Dr. Atkin's Custody Evaluation, the deposition testimony of Dr. Atkin, and the parties' tax returns for 2000, the magistrate judge concluded it would not be in the best interests of the children to move 160 miles away from their father. For that reason, the magistrate would not agree to permitting Kimberly to relocate to Boise, unless she did so without taking the children with her. The order recited that if Kimberly did decide to relocate, then custody would be transferred to Larry, so the children could continue to reside in the Burley area. Kimberly then appealed the magistrate's decision and sought permission to appeal directly to the Supreme Court pursuant to Idaho Appellate Rule 12.1. Permission was granted and the appeal is now before this Court.

## II.

### STANDARD OF REVIEW

This case is on direct permissive appeal from a decision of a magistrate judge affecting the custody of minor children; therefore, this Court is directly reviewing the magistrate's decision without the benefit of a district court appellate decision. In custody disputes, the awarding of custody of minor children rests within the discretion of the trial court whose decision will not be overturned on appeal absent an abuse of discretion. *Koester v. Koester,* 99 Idaho 654, 657, 586 P.2d 1370, 1373 (1978). In general, a trial court does not abuse this discretion so long as it recognizes the issue as one of discretion; acts within the outer limits of its discretion and consistently with the legal standards applicable to the available choices, and reaches its decision through an exercise of reason. *Sun Valley Shopping Ctr. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). Further, in any court decision

affecting children, the best interests of the child should be the primary consideration. *See, e.g., Cope v. Cope,* 98 Idaho 920, 921, 576 P.2d 201, 202 (1978) (holding the paramount question in any custody suit, including a change of custody suit, is how will the best interests of the child be served); *Doe v. Roe,* 133 Idaho 805, 808, 992 P.2d 1205, 1208 (1999)(holding the best interests of the child standard applies in proceedings to terminate parental rights); *In re: Crocheron's Estate,* 16 Idaho 441, 445, 101 P. 741, 744 (1909)(holding the best interests of the child standard applies where the legal right of a parent to the guardianship of the child is unclear).

## III.

## DISCUSSION

Kimberly raises three issues on appeal: (1) whether the magistrate judge abused his discretion in deciding to transfer custody of the children to Larry in the event Kimberly moves outside the Mini–Cassia area; (2) whether the magistrate incorrectly applied the California and New York law upon which he relied in reaching his decision; and (3) whether Kimberly should be awarded attorneys' fees and costs incurred in bringing the appeal, pursuant to I.C. § 32–704.

**A. The Magistrate Judge Did Not Abuse His Discretion in Determining the Children Should Remain in the Mini–Cassia Area.**

 Kimberly argues the magistrate judge abused his discretion in two ways. First, Kimberly argues the magistrate failed to apply the appropriate legal standard as set forth in I.C. § 32–717.[1] Second, Kimberly argues the factors the magistrate considered

do not support the order transferring the children's custody in the event Kimberly relocates outside the Mini–Cassia area. However, this Court determines the magistrate did not abuse his discretion: the magistrate recognized the issue as one of discretion, acted within the limits of his discretion and applied the correct standard, and reached the decision through an exercise of reason.

The central problem with Kimberly's first argument is she has characterized the magistrate's decision as a change of custody when, in fact, the magistrate's decision initially determined whether Kimberly should be allowed to relocate with the children, and only secondarily awarded custody to Larry and only if Kimberly chose to move to Boise. While the statutory factors set forth in I.C. § 32–717 may have some relevance, the decision here related more to what town the children would live in, rather than in whose custody they would reside. Moreover, while the trial court may not have cited to I.C. § 32–717 in the decision, the magistrate, in fact, applied the statutory factors relevant to a relocation decision. The magistrate considered the interaction and interrelationship of the children with their parents, the children's adjustment to their school and community, the health and integrity of all individuals involved, and continuity and stability in the children's lives. Thus, the trial court's decision was properly guided by an analysis of the best interests of the children.

Kim's second argument also fails, because the magistrate acted within his discretion by considering factors relevant to the best interests of the child analysis and his findings support his ultimate decision, demonstrating the decision was reached by an act of reason. In support of the decision to deny Kimberly's request to move with the children to Boise,

---

1. I.C. § 32–717. **Custody of children—Best interest.**—A. In an action for divorce the court may, before and after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper in the best interests of the children. The court shall consider all relevant factors which may include:
 1. The wishes of the child's parent or parents as to his or her custody;
 2. The wishes of the child as to his or her custodian;

3. The interaction and interrelationship of the child with his or her parent or parents, and his or her siblings;
4. The child's adjustment to his or her home, school, and community;
5. The mental and physical health and integrity of all individuals involved;
6. The need to promote continuity and stability in the life of the child; and
7. Domestic violence as defined in section 39–6303, Idaho Code, whether or not in the presence of the child.

the magistrate enumerated seven major factors relevant to the best interests of the child analysis. While Kimberly argues there are various problems with these findings, including an undue emphasis on Kimberly's fiancé, Davis, this Court determines these findings are competent and relevant and support the magistrate's ultimate decision.

██ Findings are competent, so long as they are supported by substantial, albeit possibly conflicting, evidence. *Lickley v. Max Herbold, Inc.*, 133 Idaho 209, 211, 984 P.2d 697, 699 (1999). Findings pertaining to custody are relevant, so long as they bear an appropriate nexus to the best interests of the child standard. *See Roeh v. Roeh*, 113 Idaho 557, 558, 746 P.2d 1016, 1018.

Of the seven major factors listed by the magistrate, only one related to Davis, his substance abuse problems, and his felony record. It was entirely appropriate for the judge to consider Kimberly's living arrangements, including the person with whom she was living, particularly given his legal problems. Those findings clearly related to the health and integrity of the individuals who would have direct and close contact with the children. Furthermore, these findings do not place undue importance on Davis, since the judge included six other findings in support of his decision. Included within the magistrate's analysis and relevant to the best interests of the children are the children's ability to continue to have a relationship with Larry if Kimberly moved to Boise. The trial court also considered that for the last six years, since the parties' divorce, the children had been able to remain in the original family home and to be with both parents in the same neighborhood. The magistrate noted that moving the children from the Mini–Cassia area would remove them from the "source of support that would be available if [Kimberly] remained in the community." Therefore, on the state of the record and the findings by the magistrate, there was no abuse of discretion in determining that Kimberly was not free to move the children, the

children should remain in Burley, and, if Kimberly chose to relocate to Boise, the children should stay with Larry in Burley.[2]

**B. The Magistrate Did Not Err in Considering California and New York Law.**

██ In considering Kimberly's request to relocate, the magistrate judge considered two cases from outside Idaho to guide his decision. *In re Marriage of Burgess*, 13 Cal.4th 25, 51 Cal.Rptr.2d 444, 913 P.2d 473 (1996) and *Tropea v. Tropea*, 87 N.Y.2d 727, 642 N.Y.S.2d 575, 665 N.E.2d 145(1996). Because there is virtually no Idaho law directly on point, it was appropriate for the magistrate to consider these out-of-state cases for guidance and reasoning. More specifically, these cases mention factors important to a trial court decision regarding relocation of a custodial parent. However, in both *Burgess* and *Tropea*, the courts reversed the traditional presumption against relocation and placed the burden on the other parent to present evidence why a move should not be permitted. This is contrary to Idaho law. In Idaho, the best interests of the children is always the paramount concern. Therefore, in any judicial determination regarding the custody of children, including where they reside, the best interests of the child should be the standard and primary consideration. In addition, Idaho favors the active participation of both parents in raising children after divorce, which policy is reflected in I.C. § 32–717B supporting joint custody. For these reasons, in Idaho, the moving parent has the burden of proving relocation would be in the best interests of the child before moving in violation of a previous custody arrangement.

In this case, it does not appear from the magistrate's decision that he relied on the California and New York cases to place the burden of proof on the party objecting to the move or approved of a parent freely changing location. Thus, there appears to be no

**2.** Most troubling is that the Court was informed during oral argument that Kimberly and the children are now living in Boise and Larry has chosen not to object for the time being. One would hope the parties will consider the best interests of the children in making future decisions about where the children reside, and will be able to do so without seeking court orders, which they apparently ignore.

error in the magistrate judge's consideration of these two cases.

### C. Kimberly Should Not Be Awarded Attorneys' Fees.

■■■ Under these circumstances, particularly where Kimberly acted in violation of the magistrate's order and moved to Boise, awarding fees pursuant to I.C. § 32–704 is not appropriate.

### IV.

### CONCLUSION

The magistrate judge did not abuse his discretion in determining whether the best interests of the children would be served by relocating them to Boise. The magistrate properly considered a number of factors related to the children's best interests, including some of the factors set forth in I.C. § 32–717. Furthermore, in relocation decisions such as this, the burden is on the parent seeking to relocate to prove relocation is in the best interests of the children. In light of the result here, we do not award costs or fees on appeal.

Justice SCHROEDER, WALTERS and EISMANN, concur.

Justice KIDWELL, dissenting.

This case presents very important public policy issues affecting Idaho families. How courts decide where a custodial parent may live or which parent should have custody of a child demands extremely careful scrutiny. The magistrate abused his discretion in two significant respects. First, he improperly applied the best interest of the child test in § 32–717 (BIOC test) to Ms. Roberts's request to relocate to Boise with her children. Applying the test as he did was not "necessary or proper in the best interest of the children" as required by § 32–717. Second, and perhaps most importantly, the magistrate erred by ordering that, if Ms. Roberts did relocate at any time in the indefinite future, she would lose physical custody of the children. This clause of the magistrate's order was arbitrary and punitive, and failed to account for the best interests of the children

at *the* time when a change in custody might occur. Therefore, I respectfully dissent from the analysis of the majority opinion and would vacate the magistrate's order and remand this case for further proceedings.

### I.

### FACTS AND PROCEDURE

The parties asked the magistrate court to consider two modifications to the Custody Schedule/Parenting Plan (parenting plan): (1) whether Mr. Roberts should have more time with his children; and (2) whether Ms. Roberts should be able to relocate from the Mini–Cassia area to Boise. In the opinion on appeal, the magistrate stated:

> The primary issue of these proceedings is the request of [Ms. Roberts] to be allowed to permanently remove the children from Cassia and Minidoka Counties. If the Court denies consent to remove the children, [Ms. Roberts] will then have to determine if she wants to stay in the Mini–Cassia area with custody of the children, or move and allow the defendant to have custody.

The magistrate found that the test for determining whether the parenting plan should be modified to allow Ms. Roberts to relocate "remains that of what is in the best interest of the children." Factors the magistrate considered in applying the test included:

> each parents reason for seeking or opposing the move, quality of relationship between child and ... parents, impact of the move on ... future contact with the noncustodial parent, degree to which custodial parent's and childs' life may be enhanced economically, emotionally, and educationally by the move, and feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements.

The magistrate ordered that "the request of [Ms. Roberts] to move the children outside Cassia or Minidoka counties is denied ...." Additionally, the magistrate ordered that if Ms. Roberts "moves from Minidoka or Cassia, custody of the children will be changed to Mr. Roberts, and the children will reside

with him." The court failed to explain why it would be in the children's best interest for custody to revert from Ms. Roberts to Mr. Roberts if Ms. Roberts moved from the Mini–Cassia area at any time in the indefinite future.

## II.

### STANDARD OF REVIEW

"When reviewing an exercise of discretion the Court inquires: (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason." *Brownson v. Allen,* 134 Idaho 60, 63, 995 P.2d 830, 833 (citing *Osteraas v. Osteraas,* 124 Idaho 350, 353, 859 P.2d 948, 951 (1993)).

## III.

### ANALYSIS

**A. The Court Improperly Applied The Best Interest Of The Child Test To The Issue Of Whether Ms. Roberts Could Relocate.**

The magistrate found that I.C. § 32–717(1) governed Ms. Roberts's request to modify the parenting plan so that she could relocate. This section states in pertinent part:

> In an action for divorce the court may, before and after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper in the best interests of the children. The court shall consider all relevant factors ....

I.C. § 32–717(1).

Courts may "give such direction for the custody, care and education of the children of the marriage *as may seem necessary or proper* in the best interest of the children." I.C. § 32–717 (emphasis added). Determining where a custodial parent will live based solely upon the BIOC test is neither *"necessary* [n]or *proper,* in the best interest of the children" for purposes of I.C. § 32–717 (em-

phasis added). The best interest of the child, including the child's relationship with the non-custodial parent, does constitute an important factor in determining whether a court should grant permission for a custodial parent to relocate. However, basing a decision about a custodial parent's right to relocate solely on the BIOC test overshadows and essentially eliminates consideration of the custodial parent's protected liberty interests in choosing where to live, work, and raise children. Thus, determining where a custodial parent may live, work, and parent solely based on the BIOC test constitutes an unnecessary and improper interference with the interests of custodial parents, not a "necessary and proper" direction "in the best interest of the children." I.C. § 32–717. Therefore, I would find I.C. § 32–717 inapplicable in this case.

In light of the shortcomings of the BIOC test as applied to relocation of a custodial parent, a better rule is that a custodial parent's liberty interest in choosing where to live, work and rear children, gives rise to a presumptive right to relocate. The presumption, however, is not absolute. The non-custodial parent may rebut the presumption by showing that the purpose of the relocation is interference with the non-custodial parent's rights. *See, e.g., In re Marriage of Burgess,* 13 Cal.4th 25, 31, 51 Cal.Rptr.2d 444, 449, 913 P.2d 473, 478 (1996); *In re Marriage of Postma,* 2002 WL 31235833 at *3–4 (Cal.App.2002) (unpublished opinion). The presumption could also give way if the court found, sua sponte, or at the non-custodial parent's urging, the custodial parent's relocation would substantially derogate the best interest of the child. Unlike application of the BIOC test, the presumption of a right to relocate provides balance among the interests of the child, the rights of the non-custodial parent, and the liberty interests of custodial parent.

I would find that the magistrate abused his discretion by improperly applying the BIOC test found in I.C. § 32–717 when determining whether to allow Ms. Roberts to relocate. Consequently, I would vacate and remand the magistrate's decision for reevaluation in

accord with Ms. Roberts's presumptive right to relocate.

### B. The Magistrate Erred By Ordering A Custodial Reversion Clause.

A "custodial reversion clause" is a clause of a custody order which states that custody will change, or revert, from one parent to the other, automatically, upon the happening of an event or the occurrence of a condition. I would find that the magistrate erred by ordering custodial reversion if Ms. Roberts moved from the Mini–Cassia area. The magistrate's custodial reversion clause was never subjected to the BIOC test; rather, it was an arbitrary and punitive threat intended as a mechanism through which to enforce the other provisions of the magistrate's order. Contempt proceedings, not custodial reversion clauses, are the proper method through which to enforce custody orders. *See, e.g., Blakely v. Blakely,* 100 Idaho 107, 594 P.2d 145 (1979).

Even if it is argued that the magistrate relied on the BIOC test to justify the custodial reversion clause at the time he issued his opinion, custodial reversion clauses should be found invalid. "The custody status of a child should not change *automatically* with the removal of a parent from his or her present location." *In re Marriage of Seitzinger,* 333 Ill.App.3d 103, 111, 266 Ill.Dec. 720, 727, 775 N.E.2d 282, 289 (2002). *See also Carter v. Kratzenberg,* 209 A.D.2d 990, 991, 619 N.Y.S.2d 456, 456 (1994); *Wilson v. Wilson,* 12 Va.App. 1251, 1255–56, 408 S.E.2d 576, 579 (1991); *Emerick v. Emerick,* 5 Conn. App. 649, 659, 502 A.2d 933, 938 (1985); *Hovater v. Hovater,* 577 So.2d 461, 463 (Ala.Civ. App.1990) (holding a custodial reversion clause invalid even when agreed upon by the parties in the parenting agreement). This is the case because custody reversion clauses are clearly speculative and amount to no more than conjecture concerning what might be in the best interest of the child in the indefinite future. *Korn v. Korn,* —— So.2d ——, ——, 2003 WL 164234 at *6 (Ala.Civ. App.2003). Instead, courts should consider whether changing custody meets the BIOC test only upon a showing of an actual, permanent and substantial change in circumstances

that may warrant a change in custody. *See, e.g., Brownson,* 134 Idaho at 63, 995 P.2d at 830 (stating the long-standing rule that the burden is on the party seeking a custody modification to show a permanent and substantial change in circumstances before the court will address the request on its merits).

Enforcing custody reversion clauses allows potentially antiquated court orders to eclipse present reality. Therefore, we should hold the custodial reversion clause invalid. Thus, I would vacate and remand this case in order for the magistrate to consider whether a significant change in circumstances warrants considering a change in custodial parent and, if so, whether such a change would satisfy the BIOC test.

Sadly, this case exemplifies the justification for finding custodial reversion clauses invalid. Though not part of the record on appeal, at oral argument the parties informed this Court that Ms. Roberts and her two children moved from the Mini–Cassia area to Boise two years ago. The children are in school in the Boise area and both parties agree that the children are well adjusted. Because of this appeal, the magistrate has not enforced the custodial reversion clause. Now, by upholding the custody reversion clause, this Court jeopardizes the children's living arrangements. The children may be forced to again relocate and live with their father. If this happens, it will result solely from an arbitrary and punitive clause of the magistrate's opinion stating that Ms. Roberts would have to decide "if she wants to stay in the Mini–Cassia area with custody of the children, or move and allow the defendant to have custody." This said nothing about the children's best interest when the magistrate issued his order and says no more about it today.

### IV.

### CONCLUSION

I would find that the magistrate applied the wrong standard in determining whether Ms. Roberts could relocate, and I would find the custody reversion clause in this case invalid. Therefore, I would remand this case

for further proceedings consistent with this opinion.