IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38558

| TIMOTHY M. WEIMAR, | ) | 2012 Unpublished Opinion No. 401 |
| | ) | |
| Plaintiff-Appellant, | ) | Filed: March 13, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| MARIE B. GALLEGOS, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Respondent. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge; Hon. David E. Day, Magistrate.

District court's intermediate appellate decision upholding decree of divorce and judgment entered in the magistrate division, affirmed.

Ian W. Gee, Garden Valley, for appellant.

Respondent did not participate on appeal.

_____

WALTERS, Judge Pro Tem

This is an appeal from an intermediate appellate decision of the district court, which affirmed a decree of divorce and judgment entered in the magistrate division. The issue on appeal relates to the determination of value of the community real property owned by the parties. The district court upheld the decision of the magistrate. We affirm the district court's intermediate appellate decision affirming the magistrate's determination.

I.

FACTS AND PROCEDURE

According to the facts found by the magistrate, the parties were married on July 3, 2005. The appellant husband filed an action for divorce in 2009, and the matter was heard by the magistrate in March 2010. During the trial, the parties agreed to the distribution of part of the personal property that had been owned by each of them prior to the marriage and part of the personal property that had been acquired during the marriage. They also agreed to a partial

allocation of the debts between them. A major issue addressed at the trial concerned the value of the parties' residence in Garden Valley, Idaho, the amount of the indebtedness against that property, and to whom the home should be awarded. Other issues related to the division of the balance of the parties' personal property and the allocations of the remainder of the parties' debts. The magistrate's distribution of the personal property and the allocation of debts other than the indebtedness on the real property have not been challenged on this appeal.

The real property had been acquired on August 18, 2005. Although the home was originally titled solely in the respondent wife's name, because of financing issues related to the husband's bad credit history, it was later refinanced and the wife quitclaimed the property into both of their names. Neither party disputed that the real property was community in nature. Based on the testimony of the parties and their witnesses and on the documents admitted in evidence, the magistrate made the following findings of facts relevant to the disputed issues concerning the real property (referring to the appellant as "Tim" and to the respondent as "Marie"):

> 1. As of January 6, 2010, $292,538.79 was owed on the Garden Valley property. This included $6,305.84 in unpaid interest and $2,185.60 in late charges. Neither party offered more current evidence of the debt secured by the Garden Valley property.
> 2. An appraisal dated June 28, 2006 stated the value of the Garden Valley property at $370,000 using a sales comparison approach. A later appraisal done for Tim stated the value at $305,000 as of October 2, 2009 (identified as the "third" appraisal, but no other appraisal was mentioned). While the later appraisal is more current, it is suspect for a number of reasons. First, it shows the gross living area above grade at 179 sq. ft. less than the 2006 appraisal. Second, the comparable sales used were not from near proximity to the home because of the lack of comparable sales in the area. Finally, as Marie noted, the more recent appraisal notes the absence of a central heating system that Marie said had been in place and it is clear that Tim had removed some fixtures (an expensive stone sink is notable) from the home before the appraisal was done. On the other hand, the 2006 appraisal gave a higher value even though the home was clearly unfinished at that time. The substantial additional work done after that appraisal would be expected to significantly increase the value of the home. No evidence was presented concerning market and economic changes that may have effected [sic] the value of the home. The current assessed value by the Boise County Tax Collector is $344,510. Based on the conflicting evidence, I find that the 2006 appraisal, Exhibit A, more accurately states the value of the house and I find the house has a value of $370,000.
>
>     . . . .

2

5. Throughout the course of this action and until the closing minutes of argument at the conclusion of the trial, a major issue was which party should be awarded the Garden Valley residence. In the end, Tim asked that it be awarded to him and Marie stated that she did not wish to have it because she was afraid for her safety if she lived there. Neither party asked that the residence be sold or divided in any way other than awarding it to Tim.

In his conclusions of law, the magistrate stated:

Pursuant to Idaho Code § 32-712, the court must assign the community property in such proportions as the court deems just. Unless there are compelling reasons otherwise, there is to be a substantially equal division in value, considering debts. This is a matter committed, in the first instance, to the discretion of the court, which discretion must be based on an exercise of reason and not abused. I find no reason for a division which is other than substantially equal, though it may not be mathematically identical.

The magistrate then published a table setting forth the division of property and allocation of debts between the parties. The table assigned a total value of property to the appellant in the amount of $376,792 and debts of $339,140. It assigned a total value of property to the respondent in the amount of $12,542 and debts of $16,144. In order to accomplish a substantially equal division between the parties of their assets and debts, the magistrate concluded that a payment by the appellant to the respondent of the sum of $20,627 was required. The magistrate explained:

Pursuant to the above table showing the assignment of community property and debt, Tim will receive a net distribution of $37,652, while Marie will receive a net of <$3,602>, as she is receiving more debt than property. The assignment of community property and responsibility for community debt set forth above was largely (though certainly not entirely) by agreement of the parties. It is impossible to accomplish the intent of the parties concerning assignment of the community residence and the various debts and still accomplish a substantially equal division. Since Tim is receiving $41,254 more in net community assets than is Marie, the division can only be equalized by granting Marie a judgment against Tim in the amount of $20,627.

Judgment was entered accordingly, and the appellant timely appealed to the district court. The district court affirmed the magistrate's determination. The appellant appeals to this Court from the district court's intermediate appellate decision.

3

## II.

## ISSUES

The appellant raises three issues. First, he contends that the magistrate abused his discretion when the magistrate disregarded the 2009 appraisal of the parties' real property and relied instead upon the appraisal from 2006 to establish the $370,000 evaluation of the property in 2010. Next, the appellant asserts that the magistrate violated Idaho Rule of Evidence 402 when the magistrate admitted in evidence the 2006 appraisal. Finally, the appellant contends that the magistrate abused his discretion when he ignored the valuation of $344,510 for the parties' real property shown by the Boise County Tax Assessment.

## III.

## STANDARD OF REVIEW

When reviewing a decision of the district court acting in its appellate capacity, this Court directly reviews the district court's decision. *Mackowiak v. Harris*, 146 Idaho 864, 865, 204 P.3d 504, 505 (2009). If substantial and competent evidence supports the magistrate's findings of fact, and the magistrate's conclusions of law follow from those findings, and if the district court affirms the magistrate, we affirm the district court's decision as a matter of procedure. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008). We examine the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Id*. Where lower court decisions are matters of discretion, the trial court has broad authority and will only be overturned if an abuse of discretion can be shown. *See Hentges v. Hentges*, 115 Idaho 192, 195, 765 P.2d 1094, 1097 (Ct. App. 1988). An abuse of discretion will be found if the magistrate failed to give consideration to relevant factual circumstances, *Rohr v. Rohr*, 128 Idaho 137, 141, 911 P.2d 133, 137 (1996); *Yost v. Yost*, 112 Idaho 677, 680, 735 P.2d 988, 991 (1987); *Margairaz v. Siegel*, 137 Idaho 556, 558, 50 P.3d 1051, 1053 (Ct. App. 2002); or if the magistrate's findings are not supported by the evidence, *Biggers v. Biggers*, 103 Idaho 550, 555, 650 P.2d 692, 697 (1982); *Rohr v. Rohr*, 126 Idaho 1, 3, 878 P.2d 175, 177 (Ct. App. 1994); or if the magistrate does not correctly apply the law, *Moffett v. Moffett*, 151 Idaho 90, 93, 253 P.3d 764, 767 (Ct. App. 2011) (citing *Nicholls v. Blaser*, 102 Idaho 559, 561, 633 P.2d 1137, 1139 (1981)). *See also Theiss v. Theiss*, 112 Idaho 681, 682, 735 P.2d 992, 993 (1987). In matters of discretion, we examine: (1) whether the lower court rightly perceived the issue as one

of discretion; (2) whether the court acted within the boundaries of such discretion and consistently with any rules applicable to specific choices; and (3) whether the court made its decision by an exercise of reason. *Hopper v. Hopper*, 144 Idaho 624, 626, 167 P.3d 761, 763 (2007); *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

# IV.

# DISCUSSION

## A.    Magistrate's Discretionary Decision

The appellant asserts that the magistrate abused his discretion by determining that, for the purposes of dividing the community property and allocating the debts of the parties, the 2006 appraisal of the value of the parties' residence should be used. He argues that the magistrate failed to act within the boundaries of his discretion by improperly applying the applicable legal standards. We disagree.

The magistrate was presented with three statements of value of the real property: (1) the 2006 appraisal for $370,000; (2) the 2009 appraisal for $305,000; and (3) the 2010 Boise County Tax Assessor's valuation of $344,510. The appellant asserts that the magistrate should have chosen the most recent appraisal to set the value of the real property, even though the magistrate explained why he chose the 2006 appraisal.

To say that the magistrate was required to choose one of these estimates over the other two would remove from the magistrate the authority to exercise his discretion in determining which of the values should be adopted for the purposes of dividing the parties' assets and debts. The magistrate, in his detailed decision containing his findings of fact and conclusions of law, clearly indicated that he knew he was confronted with making a discretionary decision. He set forth his rationale for using the 2006 appraisal rather than the 2009 appraisal. The magistrate determined that the latter appraisal was "suspect" due to differences in the gross living area reported, the lack of the use of comparable sales from nearby homes, and evidence that appellant had removed some expensive fixtures and a heating system prior to the valuation. The magistrate noted that the 2006 appraisal was conducted prior to completion of the construction of the residence. The magistrate reasoned that, had the construction been complete, it would have significantly increased the value of the home after 2006. The magistrate specifically noted that neither party presented any evidence concerning market and economic changes that might have

5

affected the value of the home. Also, while the magistrate recognized that the Boise County Tax Assessor's valuation had been submitted as evidence, he was not obligated to accept it as the sole and absolute basis for setting the value of the property, in the exercise of his discretion.

We agree with the observation of the district court on the intermediate appeal. The magistrate's reasoning and conclusions depended largely on credibility determinations drawn from conflicting evidence, which must be liberally construed in favor of the judgment entered. *Kohring v. Robertson*, 137 Idaho 94, 99, 44 P.3d 1149, 1154 (2002) (citing *Sun Valley Shamrock Res., Inc. v. Travelers Leasing Corp.*, 118 Idaho 116, 118, 794 P.2d 1389, 1391 (1990). The questions of credibility of witnesses, weight to be given the testimony and reasonable inferences to be drawn from the evidence, are all matters solely within the province of the trial court. *Ransom v. Topaz Mktg., L.P.*, 143 Idaho 641, 643, 152 P.3d 2, 4 (2006). The inferences of the magistrate were based on more than a scintilla of evidence and, therefore, were grounded on substantial and competent evidence and made with an exercise of reason. The magistrate's decision clearly survives the scrutiny that the appellate courts utilize in examining the exercise of a trial court's discretion. *Hopper*, 144 Idaho at 626, 167 P.3d at 763; *Sun Valley Shopping Ctr.*, 119 Idaho at 94, 803 P.2d at 1000. We concur with the district court that the appellant has not shown an abuse of discretion on the part of the magistrate.

**B.      Idaho Rule of Evidence 402**

Appellant argues that the 2006 appraisal was not relevant for the purposes of the present valuation of the real property at the time of trial in 2010 and that the magistrate, therefore, violated Idaho Rule of Evidence 402 by admitting the 2006 appraisal as evidence. Rule 402 specifies, in relevant part, "Evidence which is not relevant is not admissible." Appellant recognizes, however, that Idaho Rule of Evidence 401 also provides, "'Relevant' evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The record shows that although appellant objected to the admission of the 2006 appraisal on grounds of relevancy, the magistrate admitted the appraisal into evidence after hearing respondent's counter-argument that the appraisal was relevant to show the amount of the original loan against the property, to show that there was a discrepancy between the square footage shown by the 2009 appraisal when compared with the 2006 appraisal, and to show that items

6

were missing from the 2009 appraisal that had been evaluated in the 2006 appraisal. Respondent suggested a comparative usefulness for the appraisal as a challenge to the accuracy of the other appraisals.

Appellant now asserts that the admission of the 2006 appraisal was only for a limited purpose and that the magistrate should not have used that evidence to arrive at the value of the real property. We disagree. The transcript of the trial demonstrates that when the magistrate overruled the appellant's objection, the magistrate noted that "the older [the appraisal] is, the *less* relevant it is . . ." and further noted that respondent was also "offering it for other purposes for which it appears to be relevant." (Emphasis added.) It is clear that the magistrate did not rule that the evidence was only partially relevant, nor did he limit the scope or admissibility of the evidence.

The appellant's assertion that the magistrate essentially acknowledged that the 2006 appraisal was irrelevant is incorrect. The clear holding of the magistrate as shown in the record is that the 2006 appraisal could be less relevant than a more recent appraisal, but was nevertheless relevant for other purposes, such as regarding the original loan value and to challenge the accuracy of the other appraisals. The district court correctly observed that to the extent the appellant has argued that the relevance was limited to square footage alone, and not the final valuation, it is indisputable that square footage is directly relevant to the final valuation and price of a property. Furthermore, the magistrate completely and fully overruled the appellant's objection; he did not partially sustain the objection, partially overrule the objection, or admit the appraisal only for a limited purpose. In making its ruling, the magistrate stated, "The objection is overruled, and [the 2006 appraisal] will be admitted." At that point, the 2006 appraisal was admissible and was relevant to the valuation of the residence. There was no violation of the rules of evidence respecting relevancy of evidence.

## C.    The 2010 County Tax Assessment

Finally, the appellant argues that the magistrate erred when the magistrate did not adopt the Boise County Tax Assessment of $344,510 as the value for the parties' real property. The appellant seems to believe that the magistrate reached his ultimate conclusion by simply assuming that the 2006 appraisal figure remained accurate above all other appraisals, including the tax assessment. However, as noted by the district court on the intermediate appeal, from a reading of the magistrate's reasoning as it appears in the record, the magistrate considered all the

evidence, including that the value of the home may have increased after the 2006 appraisal and subsequently decreased after the market downturn, in addition to the removal of fixtures and lack of a heating system that previously existed in the home. The magistrate gave the tax assessment due consideration as an appropriate source of information, which was properly considered along with other evidence and the magistrate's own credibility determinations. There is no requirement that a trial court must accept a local tax assessment as the sole and exclusive calculation for determining the value of property in a divorce action.

## V.

## CONCLUSION

The magistrate did not abuse its discretion in arriving at the value of the parties' community real property. The intermediate appellate decision of the district court, upholding the decree of divorce and judgment, is affirmed.

Judge MELANSON, **CONCURS**.

Judge LANSING, **SPECIALLY CONCURRING**

I concur in the foregoing opinion, but add some further explanation of my conclusion that the magistrate's valuation finding was justified by the evidence. As the Court's opinion points out, "The magistrate's reasoning and conclusions depended largely on credibility determinations drawn from conflicting evidence . . . ." The district court, on intermediate appeal, expanded on this point, noting that "when the magistrate weighed the evidence he took additional factors into consideration, including his credibility determinations regarding the parties. When the court performed this analysis, it did so with all prior experience from having dealt with the parties, and with its superior knowledge of the parties, circumstances, and issues involved." The district court then observed that Timothy Weimar's admission to removing at least one fixture, an expensive sink, from the house "has further implications than simply increasing the value by the amount of the sink. It allows the magistrate to make inferences as to Weimar's overall credibility, which appears to have been one factor heavily considered by the magistrate." I endorse the district court's observations and note that there also was at trial other evidence that

8

may have undermined Weimar's credibility in the eyes of the magistrate, including evidence that he had altered a document that he proffered as evidence.[1]

On this record, Weimar has not shown that the magistrate's valuation finding, which was based in part on credibility determinations, was unsupported by the evidence.

---

[1] Our record also includes a judgment of conviction for criminal contempt against Weimar, which was issued after the divorce trial and decree but was based upon a motion and affidavit filed prior to the trial in this matter. The contempt judgment states that the court found beyond a reasonable doubt that Weimar, either in person or through an agent, deleted files and documents from a computer "in willful violation of the court's orders." The court found that his actions "prevented Ms. Gallegos from properly preparing for trial of the divorce action and prevented the court from having evidence necessary to determine the value and appropriate division of community assets." The magistrate court then concluded: "Given the willfulness of Mr. Weimar's acts and the impact it had on the ability of the court to fairly determine the underlying divorce action, and given that Mr. Weimar provided demonstrably dishonest testimony at the contempt trial showing his continued contempt of the authority of the court, I find that the maximum penalty provided by statute is warranted." Weimar does not challenge the contempt determination in this appeal.