132 P.3d 1249

**STATE of Idaho, Department of Health and Welfare, Plaintiff,**

v.

**Jacob F. HART, Defendant.**

**Jacob F. Hart, Third–Party Plaintiff–Respondent,**

v.

**Heather Hall, an emancipated minor, Third–Party Defendant–Appellant.**

No. 31126.

Supreme Court of Idaho, Boise, February 2006 Term.

March 22, 2006.

Bauer & French, Boise, for appellant. Charles B. Bauer argued.

M. Brent Morgan, Chartered, Pocatello, for respondent. M. Brent Morgan argued.

SCHROEDER, Chief Justice.

This is a custody case involving Mariah Hall–Hart, the daughter of Heather Hall and Jacob Hart.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Mariah was born on April 4, 2001. Heather was a junior at Pocatello High School when she became pregnant. Jacob was twenty-one years old. The parties were never married. This case began as a paternity action by the State of Idaho, Bureau of Child Support Services against Jacob in August 2001. When it was determined that Jacob was Mariah's father, he signed a Waiver, Admission of Service and Stipulation agreeing to paternity and child support. The parents then entered into a Parenting Agreement in August, which provided for joint and shared custody of Mariah with Heather and Jacob having approximately equal time.

Heather subsequently moved to Laramie, Wyoming, with Mariah. In November 2001 Jacob petitioned the court for an order approving the Parenting Agreement. Heather claimed the Parenting Agreement was voidable because she was a minor when she signed it. The court agreed and voided the agreement.

After repeated delays trial was held in January 2004 which included the testimony of two expert witnesses, Dr. Mark Corgiat and Dr. Ruby Walker. The magistrate court issued a memorandum opinion and judgment in February 2004, directing a shared physical custody arrangement with a two-week rotation until Mariah begins kindergarten, at which time Mariah is to reside primarily with Jacob, with Heather having alternate week-

ends and eight weeks of summer vacation. Jacob filed a Motion to Alter or Amend and a Motion for Attorney Fees and Costs. Heather filed a Motion for Reconsideration. In April 2004 the court affirmed its prior orders governing custody of Mariah and denied Jacob's request for attorney fees.

Heather requested leave to pursue a permissive appeal to this Court, which the trial court and this Court granted. Heather argues that the trial court's order for equal joint physical custody constitutes an abuse of discretion, that several of the trial court's findings of fact and conclusions of law are not supported by substantial and competent evidence, and that the court's conclusion that custody and visitation schedule shall change to a primary schedule with Jacob is not supported by the evidence and invalid as a matter of law. Jacob requests attorney fees on appeal.

## II.

## STANDARD OF REVIEW

Review of the trial court's decision is limited to ascertaining whether the evidence supports the findings of fact and whether the findings of fact support the conclusions of law. A trial court's findings of fact in a court tried case are liberally construed on appeal in favor of the judgment entered in view of the trial court's role as trier of fact. It is the province of the trier of fact to weigh conflicting evidence and testimony and to judge the credibility of the witnesses. If the findings of fact are based on substantial evidence, even if the evidence is conflicting, they will not be overturned on appeal. However, this Court exercises free review over the lower court's conclusions of law to determine whether the court correctly stated the applicable law, and whether the legal conclusions are sustained by the facts found.

*Roell v. Boise City,* 134 Idaho 214, 216, 999 P.2d 251, 253 (2000) (internal citations omitted).

This Court reviews a magistrate's decision regarding the custody of a minor child for an abuse of discretion. *Hoskinson v. Hoskinson,* 139 Idaho 448, 455, 80 P.3d 1049, 1056 (2003).

## III.

### THE TRIAL COURT'S FINDINGS ARE SUPPORTED BY SUBSTANTIAL COMPETENT EVIDENCE

■ The trial court made underlying findings of fact in support of its conclusions as to custody. Heather maintains that some of the findings are not supported by substantial and competent evidence. She disputes the trial court's finding that she moved to Wyoming "under the pretense" of going to visit her father and argues she was going to her father's and told Jacob that information. While this may be true, the trial court based its finding on substantial and competent evidence. Jacob testified, "Unbeknownst to me, Mariah and Heather moved to Laramie, Wyoming.... [A]s far as I know she was going on vacation to see her father with Mariah."

■ Heather takes issue with the trial court's statement that she "is unwilling to recognize that Mariah would benefit from a consistent relationship with her father." She points out that Dr. Corgiat testified that Heather stated with sincerity that she recognized the importance of Jacob's relationship with Mariah. However, the trial court also heard testimony from Dr. Corgiat that, "At certain times [Heather] clearly indicates she thinks the child needs more contact with dad, but then says, but the child's with me so it's in his ballpark. He's the one with the responsibility. He needs to do whatever." Additionally, Jacob testified that "just about every time" he had difficulties when arranging for custodial access to Mariah since early 2002. While Dr. Corgiat indicated that Heather understood the importance of Mariah's relationship with Jacob, the court based its finding on other substantial evidence.

■ Heather challenges the trial court's finding that she "demonstrated a propensity to restrict visitation" or that "[she] and her partner Rick have unreasonably obstructed, denied and controlled Jacob's visitation." She points to a transcript of a phone conversation between Jacob and her partner, Rick, ending with Jacob and Rick making plans to continue their conversation and Rick suggesting more appropriate ways to communicate. While this may also be true, the trial court based its finding on substantial evidence. Jacob testified that the night before one of his trips to Laramie he talked with Heather and she said, "Have a fun drive for nothing" and refused to allow him to have Mariah when he arrived the next day, so he ended up leaving town. He further testified that Rick used abusive language towards him in front of Mariah and that Rick used visitation with Mariah as a negotiation tool.

■ Heather also disputes the finding that living arrangements while she was pregnant "were very unstable." She testified that during her pregnancy she lived with her mother and step-dad in Nevada, then with her sister in Twin Falls due to her mother and step-dad's financial difficulties supporting her. She then moved in with her brother and his fiancé in Pocatello. This constitutes substantial evidence, and the trial court's finding will not be overturned on appeal.

## IV.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION WHEN IT ORDERED EQUAL JOINT PHYSICAL CUSTODY BETWEEN HEATHER AND JACOB

■ Heather contends the trial court abused its discretion when it ordered equal joint physical custody of Mariah. Idaho Code § 32–717 gives a judge wide discretion regarding custody decisions, subject to some restrictions. *Hoskinson v. Hoskinson*, 139 Idaho 448, 455, 80 P.3d 1049, 1056 (2003). "[A] child's welfare and best interests are of paramount importance." *Id.* This Court reviews a magistrate's decision regarding the custody of a minor child for an abuse of discretion. *Id.* In reviewing an exercise of discretion, this Court must consider: "(1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason." *Elec. Wholesale Supply Co., Inc. v. Nielson*, 136 Idaho 814, 824, 41 P.3d 242, 252 (2001) (quoting *Sun Valley Shopping Ctr. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991)).

The trial court perceived the issue of custody of Mariah as one of discretion, stating that the decision was based on the factors set forth in I.C. § 32–717 and the testimony and evidence at trial, which included the opinions of two expert witnesses. In addition to the findings of fact previously discussed, the trial court considered the following points in reaching its decision.

In February 2002 Dr. Walker was ordered to make "immediate recommendations concerning temporary custody and visitation." Her evaluation was performed five months after Heather left Pocatello to reside in Wyoming, during which time Jacob had very limited contact with Mariah. Dr. Walker found that Heather was the "ultimate caregiver for Mariah" and recommended Heather have primary custody with Jacob having limited visitation. The trial court found that Dr. Walker's findings were sound, "especially given the time constraints under which she had to operate." The trial court also noted that Dr. Walker conceded her concerns were speculative, she had not seen the parents or Mariah since March 2002, nor has she met with Heather's partner, Rick. After a hearing on March 14, 2002, the parties agreed to follow the recommendations of Dr. Walker, and stipulated to continue the trial, which was set for October 2002, so that Jacob could obtain an independent custody evaluation if mediation was unsuccessful. The trial court was advised that Heather and Jacob had reached an agreement. The agreement later fell apart and Heather was ordered to cooperate in a custody evaluation to be performed by Dr. Corgiat.

Dr. Corgiat found that both parents are capable of taking care of Mariah's needs, but noted there were "certain attitudinal problems" with Heather that frustrated Jacob's access to Mariah. Dr. Corgiat disagreed on the amount of attachment that existed between Mariah and Heather. He testified that Mariah had multiple attachments, including Jacob, and she was not primarily attached to Heather. He recommended Jacob have primary physical custody of Mariah and that sharing custody equally would not be harmful to Mariah. He noted that if Jacob received primary custody, he was amenable to liberal visitation with Mariah,

whereas if Heather received primary custody, she wanted Jacob to have visitation one week every other month for a year and then one week every month thereafter. The trial court found Heather's proposed custody arrangement severely limited Jacob's visitation and corroborated Dr. Corgiat's conclusion that she is unwilling to recognize that Mariah would benefit with a consistent relationship with Jacob.

Doubtless the splitting of custody in the fashion done by the trial court creates issues. Uprooting a child every two weeks to travel and live in alternating locations with alternating people raises serious concerns as to the welfare of the child. However, there is evidence in the record from Dr. Corgiat supporting the decision. The trial court did not abuse its discretion when it ordered equal joint physical custody between Heather and Jacob.

## V.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION WHEN IT ORDERED A DIFFERENT CUSTODY ARRANGEMENT AFTER MARIAH ENTERS KINDERGARTEN

■ The trial court's order provides a different custody schedule to be followed after Mariah enters kindergarten. Heather maintains that the automatic custody change violates the well-established principle that orders relating to custody may be modified only upon a showing of substantial and material changes in the circumstances that warrant a modification in the best interests of the child, relying on a dissenting opinion in *Roberts v. Roberts*, 138 Idaho 401, 64 P.3d 327 (2003), and cases from other jurisdictions. Conversely, Jacob asserts that the trial court recognized there was an opportunity to continue to allow both parents to have equal custodial access to Mariah before she enters kindergarten and that it is impracticable to continue that arrangement when Mariah is in school. Jacob correctly notes that in *Roberts* this Court upheld the trial court's decision to automatically change custody to the father if the mother relocated to Boise with her minor children.

■ A child starting school constitutes a change in the circumstances, and this Court

has upheld court decisions giving primary custody to one parent during the school year and directing a different schedule during the summer months. *See Ratliff v. Ratliff,* 129 Idaho 422, 925 P.2d 1121 (1996) (affirming the magistrate court's decision directing one parent to have primary custody during the school year and then modifying visitation to occur in two week blocks during the summer). By itself an order changing custodial arrangements when a child enters school is not an abuse of discretion. This case creates a difficult issue, however since the two parents have shared physical custody equally for several years.

Heather argues that the trial court's decision that the parents have joint legal and physical custody and identifying Jacob as the primary physical custodian is inconsistent with I.C. § 32–717B, unsupported by the record, and unreasonable. She relies on *King v. King,* 137 Idaho 438, 50 P.3d 453 (2002), and asserts that this Court noted that the term "primary physical custody" does not appear in the statute, but recognizes the frequent usage of the term to mean the parent who has the greater amount of time with the child in that case. Here, the trial court fixed an equal sharing custody schedule until Mariah reaches kindergarten, but also directed that Jacob is to have "primary custody;" Heather claims these designations are contradictory.

In this Court's discussion regarding I.C. § 32–717B, it stated:

" 'Joint custody' means an order awarding custody of the minor child ... to both parents and providing that physical custody shall be shared by the parents in such a way as to assure the child ... of frequent and continuing contact with both parents." IDAHO CODE § 32–717B(1) (1996). Joint physical custody does not mean that the parents have physical custody of the child for equal periods of time, nor does it mean that the child should alternate back and forth between the parents for specified periods of time. IDAHO CODE § 32–717B(2) (1996). The actual amount of time the child spends with each parent is to be determined by the trial court. *Id.*

*King,* 137 Idaho at 445, 50 P.3d at 460.

*King* does not resolve this case in favor of Heather. The question comes around to whether the trial court abused its discretion. Against the background of the parents sharing custody equally it is appealing to say that the trial court should have ordered a further hearing when time elapsed and school became imminent, necessitating that one parent's time with the child be expanded and the other's diminished. However, the trial court did not abuse its discretion in doing otherwise. There was evidence that Jacob was more responsible in assuring that Mariah would have continuing family relations with him and Heather. There was evidence that this was in the best interests of Mariah. During the time that physical sharing of Mariah was feasible the trial court equalized that time with both parents. Inevitably that has to end when Mariah reaches school age and the parents live hundreds of miles apart. There was no abuse of discretion in determining that Mariah would live primarily with her father during the school year after determining that he would do better in fostering a strong parental bond with both parents.

## VI.

## JACOB IS NOT ENTITLED TO ATTORNEY FEES ON APPEAL

 Jacob asserts this appeal was brought frivolously, unreasonably, or without foundation and requests attorney fees on appeal pursuant to I.C. § 12–121 and I.A.R. 41. While Heather did not prevail, she has made a good faith argument challenging the change of custody without further hearing upon Mariah's entry into kindergarten.

## VII.

## CONCLUSION

The decision of the trial court is affirmed. Jacob is awarded costs. No attorney fees are allowed.

Justices TROUT, EISMANN, BURDICK and JONES concur.