## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 31423

CHRISTOPHER F. F. HOPPER,

    Plaintiff-Appellant,

v.

SUZANNE HOPPER,

    Defendant-Respondent.

)
) **Boise, December 2006 Term**
)
) **2007 Opinion No. 43**
)
) **Filed: March 19, 2007**
)
) **Stephen W. Kenyon, Clerk**
)

---

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Honorable Russell A. Comstock, Magistrate Judge.

The decision of the district court is <u>vacated and remanded</u>.

Christopher F.F. Hopper, Boise, appellant *pro se*.

Kulchak & Associates, Boise, attorneys for respondent. J. Michael Kulchak argued.

---

SCHROEDER, Chief Justice.

### I.
### FACT SUMMARY

Christopher Hopper (Chris) and Suzanne Hopper (Suzanne) were married in 1999 while residing in Boise, Idaho, where they made their marital home. Their only son, Caidan, was born in January 2003. In March 2003, unknown to Chris, Suzanne contacted her mother in Stevensville, Montana, about coming to live with her. Arrangements were made during the ensuing months, and on June 17, 2003, Suzanne took Caidan and secretly left for Montana. Caidan was five months old at the time.

Suzanne obtained a domestic violence protection order against Chris in Ravalli County, Montana, and later filed a petition for divorce in Missoula County, Montana. The claim of domestic violence was subsequently determined to be false. Chris discovered Suzanne's whereabouts when he was served with the *ex parte* temporary protection order, and shortly

thereafter he filed for divorce in Ada County, Idaho. The Montana actions were consolidated and eventually dismissed on August 14, 2003 in deference to Idaho's jurisdiction over the matter.

Chris immediately filed a motion for temporary custody which was heard at the end of September. On October 2, 2003, the magistrate issued an order awarding temporary custody of Caidan to Suzanne. Chris had no contact with Caidan from the time Suzanne left in June until the commencement of court-ordered visitation in October. The combined result of Suzanne leaving the state and filing the actions in Montana was to cut off the relationship between Chris and Caidan for over three months. The magistrate judge stated that the arrangement did not satisfy "the court's sense of justice" as between the parties but concluded that Caidan's interests would best be served by remaining in Suzanne's custody during the pendency of the case, subject to substantial visitation by Chris. The magistrate declined to award Suzanne financial support, noting that her decision to move to Montana had increased both parties' expenses and stating that support would be entered in the event she returned to Idaho.

The magistrate judge appointed Dr. Mack Stephenson, Ph.D., a licensed psychologist, to conduct a parenting evaluation to assist in making a final custody determination. Dr. Stephenson's report recommended that the parties share joint legal custody of Caidan, with Suzanne having primary physical custody and Chris receiving frequent visitation. Dr. Stephenson based his conclusion on the finding that Suzanne had historically been the primary parent and the one with whom Caidan had spent more time, noting that children of that age need stability and consistency, including a stable relationship with a primary caregiver.

The parties stipulated to a divorce and agreed upon a division of their community property and debts. The custody issue was tried before the court on April 13, 2004, and on June 2, 2004 the trial court issued its Findings of Fact, Conclusions of Law and Order granting sole legal and physical custody to Suzanne subject to visitation by Chris. The trial court stated that its custody determination was not intended to punish either party but was the best result for Caidan. The trial court reaffirmed and expanded its earlier findings made in connection with the order for temporary custody renewing its inference that the parties had tacitly agreed Suzanne would be the primary caregiver. The trial court found joint physical custody to be impractical because of the distance between the parties and also inadvisable due to Caidan's need for stability. The trial court also rejected joint legal custody because of the inability of the parties to reach consensus and follow through on agreements without court involvement. The trial court

2

altered the visitation schedule recommended by Dr. Stephenson in order to reduce the amount of travel Caidan would have, with the consequence that Chris was required to make frequent trips to Montana in order to exercise his visitation. Rather than require Suzanne to reimburse a portion of the travel expenses, the trial court withheld an award of child support, finding that the cost of travel occasioned by Suzanne's move far exceeded the amount of child support that would otherwise be due.

Counsel for Chris was granted leave to withdraw, and Chris, who is an attorney, has represented himself. He immediately moved to reopen discovery and depose Dr. Stephenson. While that motion was pending, the trial court entered an Order for Custody and Child Support and Award of Costs as a Matter of Right on August 3, 2004. Chris also filed a Motion to Reconsider, Motion for New Trial, Motion to Amend and to Make Additional Findings of Fact and Conclusions of Law, Motion to Augment Record with Montana Documents, and Motion for Permission to Direct Appeal the Idaho Supreme Court. He moved for a stay pending resolution of the post trial motions and appeal and requested an award of attorney fees relating to the Montana actions. The magistrate judge allowed the documents from the Montana proceedings to be included in the record, but denied the remainder of the motions. This Court granted leave for Chris to appeal directly to the Supreme Court.

Chris contends the trial court abused its discretion by awarding custody to Suzanne even though she had secretly removed Caidan from the state and deprived him of any contact with Chris for over three months. He argues that the custody arrangement ignores statutory standards, violates public policy, and deprives him of meaningful visitation. He also argues that the trial court impermissibly relied on factors related to his religion and that certain factual findings were clearly erroneous.

## II.
## STANDARD OF REVIEW

Child custody determinations involving minor children are left to the sound discretion of the trial court, and will not be overturned on appeal absent an abuse of discretion. *Hoskinson v. Hoskinson*, 139 Idaho 448, 454, 80 P.3d 1049, 1055 (2003); *Roberts v. Roberts*, 138 Idaho 401, 403, 64 P.3d 327, 329 (2003). In reviewing such decisions, the relevant inquiry is whether the trial court (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the choices before it; and (3) reached its decision by an exercise of reason. *Hoskinson*, *supra*; *Roberts*,

3

*supra*. It is the province of the trier of fact to weigh conflicting evidence and testimony and to judge the credibility of witnesses. The trial court's findings of fact in a court tried case will be upheld if they are supported by substantial and competent evidence, even if the evidence is conflicting, and will be liberally construed in favor of the judgment entered. *State v. Hart*, 142 Idaho 721, 723, 132 P.3d 1249, 1251 (2006) (quoting *Roell v. Boise City*, 134 Idaho 214, 216, 999 P.2d 251, 253 (2000)). With respect to questions of law, however, this Court exercises free review to determine whether the law was properly construed and applied. *Id.*

## III.
## TIMELINESS OF APPEAL

Suzanne argues that Chris' appeal is untimely and should be dismissed. Subsequent to the grant of permissive appeal Suzanne moved to dismiss the appeal as untimely. The Court denied the motion and will not revisit the issue.

## IV.
## THE TRIAL COURT ERRED IN DETERMINING CHILD CUSTODY

Idaho Code § 32-717B(4) provides as follows: "Except as provided in subsection (5), of this section, absent a preponderance of the evidence to the contrary, there shall be a presumption that joint custody is in the best interests of a minor child or children." That presumption can be overcome if a parent is found by the court to be a habitual perpetrator of domestic violence. I.C. § 32-717B(5). That condition does not exist in this case. Idaho Code § 32-1007 provides the following:

> The father and mother of a legitimate unmarried minor child are equally entitled to its custody, services and earnings. If either the father or mother be dead or be unable or refuse to take the custody or has abandoned his or her family, the other is entitled to the child's custody, services and earnings.

None of the conditions that would cause a loss of equal custody rights defined in I.C. § 32-1007 exists is this case.

In this case the custodial rights of the father were compromised by the criminal act of the mother in taking the child from Idaho and the misconduct of the mother in making a false domestic violence claim. Idaho Code § 18-4506.1. provides the following:

> A person commits child custody interference if the person, whether a parent or other, or agent of that person, intentionally and without lawful authority:
>
> (a) Takes, entices away, keeps or withholds any minor child from a parent or another person or institution having custody, joint custody, visitation or other

parental rights, whether such rights arise from temporary or permanent custody order, or from the equal custodial rights of each parent in the absence of a custody order . . . .

None of the defenses to that statute have been shown to exist in this case.

In making child custody determinations, "a child's welfare and best interests are of paramount importance." *Hoskinson*, 139 Idaho at 455, 80 P.3d at 1056. Idaho Code § 32-717(1) directs the trial court, in determining what custody arrangement will be the child's best interests, to consider all relevant factors including the following list which is not exhaustive: (1) the parents' wishes; (2) the child's wishes; (3) the child's relationship with the parents and siblings; (4) the child's adjustment to the home, school and community; (5) the character and circumstance of the individuals involved; (6) the need for continuity and stability in the child's life; and (7) domestic violence. In addition to those factors listed, it is presumed in our law that a continuing relationship with both parents is in a child's best interest. Idaho Code §§ 32-717B(4), 32-1007 and 18-4506. That is a fundamental principle that must be considered.

In this case the father's equal rights were prejudiced by the mother absconding with the child in violation of I.C. § 18-4506 and obtaining an unfounded domestic violence order in Montana restricting the father's ability to maintain a relationship with his child. Glossing over these facts and going to the end result that the mother has a greater relationship with the child than the father creates an untenable condition. If permitted to stand, the lesson from this case is that the law may be disregarded, a crime committed, falsehoods told, and advantage gained from the misconduct. The proceedings should not have been allowed to continue for the duration with the mother holding the child out of state while gaining all of the evidentiary benefits of an enhanced relationship with that child to the detriment of the father. The mother should have been ordered to return the child to Idaho where the father might exercise his rights as an equal parent and have this case decided with the underlying legal and social principle that it is the best interests of a child to have a continuing relationship with both parents.

The error that initially occurred has been exacerbated by the lapse of time as these proceedings have taken place. That is a misfortune that follows from the conduct of the mother and the failure of remedial action at the earliest stage of this case. Continuing misfortunes will accumulate if the advantage gained by the mother in this case is allowed to continue contrary to the fundamental social and criminal law of the state. There is no perfect remediation for the

5

problems in this case, but at a minimum a custody hearing must be held with the child in Idaho where the father has an opportunity to have the contact with his child to which he is entitled and the child receives the benefit recognized in our law that it is in the best interests of the child to have a continuing relationship with both parents.

## V.
## CONCLUSION

The order of the trial court is vacated. The case is remanded for proceedings which require the mother to return the child to Idaho.

Justices EISMANN, BURDICK and JONES **CONCUR**.

Justice TROUT, Dissenting.

"[T]he awarding of custody of minor children rests within the discretion of the trial court whose decision will not be overturned on appeal absent an abuse of discretion." *Roberts v. Roberts,* 138 Idaho 401, 403, 64 P.3d 327, 329 (2003). The magistrate judge in this case recognized the paramount importance of the child's best interests and arrived at his decision through an exercise of reason; therefore, I respectfully dissent from the Court's opinion.

While I do not condone the mother's actions in moving to Montana without notice to the father, I believe the record and transcript reflect the magistrate judge carefully considered the mother's wrongdoing in arriving at his ultimate determination. He stated during a hearing that he disapproved of the mother's behavior, but he felt the child's interests would best be served by remaining with his primary caretaker – his mother. In fact, the judge noted in his decision awarding permanent custody to the mother that "if the character of all individuals involved was the only factor for the court to consider, it is likely that the court would award primary custody of Caiden to Chris."

Further, the magistrate judge acknowledged the legal presumption that joint custody was in the child's best interests and emphasized the love both parents have for the child; however, the court also recognized the geographical distance between the parents and the resulting impracticality of a joint-custody arrangement. Perhaps most importantly, the court considered Dr. Stephenson's recommendation that it was in the best interests of the child to remain with his mother. In arriving at his determination, Dr. Stephenson noted the child's need for a continuous and predictable schedule as well as the difficulty a child at Caidan's age would have in adapting to structural changes in his care. Caiden, who is now four years old, has been primarily in the

6

custody of his mother in Montana for nearly four years. The mother's family lives in Montana, and she has no connections to Idaho other than the father. I agree with the Court that there is "no perfect remediation" for the problems in this case; however, the effect of the Court's opinion is that the child and his mother will be uprooted and forced to return to Idaho to re-litigate this matter. While this may be a just result between the mother and father, it is clearly not in the best interests of the child. This does not mean that a parent's misconduct or character should not be considered in a court's determination of what would be in the child's best interests. Indeed, such poor behavior in other child custody cases may indicate it is not in the child's best interests to remain with the misbehaving parent. This is a matter of discretion. The magistrate judge, after careful consideration of the facts in this case, decided the mother's character was "not the weightiest factor in making a custody decision for a 15-month old," recognizing that as the child grew and developed, that may change. Those are precisely the types of difficult decisions we ask trial judges to make, and we should abide by those decisions when they are supported by substantial and competent evidence. I respectfully dissent from the Court's opinion and would affirm the decision of the magistrate judge.