# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 44622-2016

CARLOS MARTINEZ (PORTILLO),    )
    )    **Boise, April 2017 Term**
    Petitioner-Respondent,    )
    )    **2017 Opinion No. 66**
v.    )
    )    **Filed: June 20, 2017**
EVELIA CARRASCO (MENDOZA),    )
    )    **Karel A. Lehrman, Clerk**
    Respondent-Appellant,    )
and    )
    )
STATE OF IDAHO, Department of Health    )
and Welfare, Child Support Services    )
    )
    Intervenor-Respondent.    )
    )

Appeal from the Magistrate Court of the Seventh Judicial District of the State of Idaho, in and for Bingham County. Hon. Scott H. Hansen, Magistrate Judge.

The judgment of the magistrate court is <u>vacated</u>.

Earl Blower, Swafford Law PC, Idaho Falls, argued for appellant.[1]

Jared M. Harris, Baker & Harris, Blackfoot, argued for respondent.

_____

EISMANN, Justice.

This is an appeal out of Bingham County from the modification of a judgment by default to require that the parents of a child rotate custody of their three-year-old child every three weeks, where the father is living in Blackfoot and the mother is living in Oceanside, California, a distance of 913 miles away. We hold that the magistrate court abused its discretion in ordering that custody rotation. In addition, the mother had moved to modify the judgment by default, but did not move to set aside the entry of default. We hold that the father waived the default by litigating the motion to modify.

_____

[1] Mr. Blower was not counsel for appellant in the trial court.

# I.
## Factual Background.

In June 2011, Carlos Martinez ("Father") and Evelia Carrasco ("Mother") met in Idaho Falls, and they lived together in Idaho until February 2013. When they separated, Mother was seven months pregnant. She moved to Salt Lake City to live with her sister and gave birth while there to a male child ("Child"). She then returned to Idaho, and in September 2013, she moved to California with Child and her older nine-year-old son from a prior relationship.

On July 25, 2013, the State of Idaho, Department of Health and Welfare ("Department"), filed an action in Bingham County against Father and Mother to establish filiation and child support. After Department established through DNA testing that Father was the father of Child, Father filed a cross-claim against Mother seeking, among other things, that the court enter a judgment providing: "That the parties share joint legal and joint physical custody of the minor child. The parties will have custody every other week alternating on Friday nights at 6:00 p.m."

On April 16, 2014, Father filed a separate action against Mother seeking, among other things, a judgment providing: "That the parties share joint legal and joint physical custody of the minor child. The parties will have custody every other week alternating on Friday nights at 6:00 p.m." On April 17, 2014, the magistrate court entered an order consolidating the case filed by Department into the case filed by Father.

The State was able to serve Mother in Pocatello on July 31, 2014. She contends that she had returned temporarily to assist her nieces in obtaining public assistance. She apparently applied for public assistance in Idaho while she was in Pocatello, which was probably how the State was able to locate and serve her. Father was unable to personally serve her, so he served her by publication in a Pocatello newspaper, which service was completed on September 20, 2014.[2] He obtained a default judgment on October 16, 2014, and an amended judgment on December 29, 2014.[3] The amended judgment provided, "That the parties share legal custody

---

[2] Mother did not challenge the service by publication in a Pocatello, Idaho, newspaper on the ground that she was living in California at the time.

[3] A copy of the original judgment is not in the record, so the record does not reflect how the amended judgment differs from the original judgment. Likewise, the record does not reflect how an amended judgment could be entered without Mother being served with a motion to amend the original judgment.

and FATHER have sole physical custody of the minor child with MOTHER to have visitation as the parties can agree." It also provided that "MOTHER be ordered by the court to pay FATHER's attorney's fees and costs of $2,500.00," although there is no indication of the statutory basis for such award.

Mother had actual physical custody of Child until March 31, 2016. Father went to Oceanside, California, where Mother was living with Child and her older son. He found her at a Wal-Mart store and told her that his mother was there from Mexico and wanted to see Child. She agreed to that request. Mother's older son was in school, and she drove to his school to pick him up, with Child, Father, and Father's mother in the car. Mother agreed to permit Child to spend the night with Father, but asked that he also take her older son because he and Child were close. They agreed to meet at the Wal-Mart store the next day, which was March 31, 2016. When Mother arrived at the store, Father was not there. She called him, and he stated that he was taking Child and that he left Mother's older son outside her apartment. Father then brought Child to Idaho.

On April 14, 2016, Mother filed a motion pursuant to Idaho Rules of Family Law Procedure 306 and 809(4) to set aside the initial October 16, 2014, default judgement on the ground that it was void. At the conclusion of oral argument on the motion, the magistrate court stated that it would decide the motion based upon Idaho Rule of Civil Procedure 60(b)[4] and that it could "find no mistake, inadvertence, or other grounds under Rule 60(b) to set the judgment aside under these circumstances." However, the court stated that it would permit Mother to make an oral motion to modify the existing judgment, to be followed by a written one.

---

[4] The magistrate court erred in holding that the motion should be resolved pursuant to Idaho Rule of Civil Procedure 60(b), but that error was harmless. Father's judgment by default and the later amended judgment were entered pursuant to the Idaho Rules of Civil Procedure. However, Mother's motion to modify the judgment was filed after the Idaho Rules of Family Law Procedure took effect statewide on July 1, 2015. Rule 101 of those rules provides:

> These rules govern the procedure in the magistrate's division of the district court in the State of Idaho in all actions for divorce, legal separation, child support, child custody, and paternity; . . . and all proceedings, judgments or decrees related to the establishment, modification, or enforcement of orders in such actions, except contempt.

Therefore, the Idaho Rules of Family Law Procedure applied to Mother's motion to modify the judgment and to all further proceedings. However, Rules 306 and 809(4) of the Idaho Rules of Family Law Procedure are essentially the same as Rules 55(c) and 60(b)(4) of the Idaho Rules of Civil Procedure. Therefore, the court's error as to which rules applied was harmless.

After the magistrate court stated it would deny the motion to set aside the default judgment, it set an evidentiary hearing on the anticipated motion to modify and then told the parties that they needed to discuss a temporary custody arrangement for Child. The court made it clear that it was contemplating equal time for both parents. It stated as follows:

> Let me just throw out a suggestion to you. What I anticipate doing is saying that Dad will keep the child until the month of April is over, and then Mom can take the child for the month of May. And then Dad will get the child back for the month of June. So we're just going to rotate it on that basis between on that.
> Now, that is not the best custody arrangement for this child. I understand that. But under the circumstances and the limited amount of time, it's somewhat fair to the parents—probably not fair to your child, but it's fair to the parents.
> Now, if you men want to discuss that with your clients, you can do that. If not, we'll launch into a hearing at 4:00 o'clock. And what I'll do is I'll take a little bit of testimony from each of these parties for a few minutes, and then I'll issue a decision.

Mother is not fluent in English and had to communicate through an interpreter. After a recess, the parties stipulated to change physical custody of Child every two weeks. Mother filed her petition to modify on April 26, 2016.

The evidentiary hearing was held on August 11, 2016. At that time, Child was three years of age and Mother's older son was nine years of age. After the trial, the court entered its findings of fact and conclusions of law and a judgment. The judgment required the parties to change physical custody of Child every three weeks, with the exchange of custody to occur at the McDonald's restaurant in Barstow, California off I-15 at exit 184, and it ordered that neither party would pay child support and that each party would provide health insurance for Child if it was available at a reasonable cost and would pay one-half of any uncovered medical expenses for Child.

Mother petitioned for a permissive appeal to this Court pursuant to Idaho Appellate Rule 12.1, which this Court granted. Mother then filed her notice of appeal.

## II.

### Does this Court Have Jurisdiction to Hear the Appeal?

On October 16, 2014, Father obtained the entry of default against Mother and a default judgment. On April 14, 2016, Mother filed a motion pursuant to Idaho Rules of Family Law

4

Procedure 306 and 809(4) to set aside the default judgment on the ground that it was void because the magistrate court lacked jurisdiction to enter the judgment. Father's cross-claim had been served by publication in a Pocatello newspaper in September 2014. Mother contended that she had been a resident of California from September 2013 to the present; that while she was temporarily in Idaho visiting her niece, she had asked for public assistance; that she did not know of this lawsuit or the judgment until March 31, 2016, after Father had taken Child;[5] and that California was her son's home state for purposes of the Uniform Child Custody Jurisdiction and Enforcement Act. The magistrate court denied her motion to set aside the default judgment, but stated that she could file a motion to modify the judgment. In so stating, the court erred.

"Courts distinguish a judgment by default from the mere entry of default. . . . An entry of default and an entry of default judgment are two separate events or steps." 46 Am. Jur. 2d *Judgments* § 233 (2006) (footnotes omitted). An entry of default does not constitute a judgment. *Pierce v. McMullen*, 156 Idaho 465, 469, 328 P.3d 445, 449 (2014). Rule 301 of the Idaho Rules of Family Law Procedure provides for the entry of default,[6] and Rules 304 and 305 provide for entry of a default judgment.[7] The corresponding Idaho Rules of Civil Procedure are essentially identical.[8]

---

[5] The clerk of the court mailed a copy of the judgment to Mother at an address in Pocatello provided by Father, and Mother did not receive it.

[6] Rule 301 of the Idaho Rules of Family Law Procedure provides:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the court, shall order entry of default against the party. Default shall not be entered against a party who has appeared in the action unless that party (or, if appearing by representative, the party's representative) has been served with three (3) days written notice of the application for entry of such default.

[7] Rule 304 of the Idaho Rules of Family Law Procedure provides:

> When the petitioner's claim against a respondent is for a sum certain or for a sum which can by computation be made certain, the court or the clerk thereof, upon request of the petitioner, and upon the filing of an affidavit of the amount due showing the method of computation, together with any original instrument evidencing the claim unless otherwise permitted by the court, shall enter judgment for that amount and costs against the respondent, if the respondent has been defaulted for failure to appear and if the respondent is not an infant or incompetent person, and has been personally served, other than by publication or personal service outside of this state. Any application for a default judgment must contain written certification of the name of the party against whom judgment is requested and the address most likely to give the respondent notice of such default judgment, and the clerk shall use such address in giving such party notice of judgment. An application for default judgment in a divorce or annulment action must be

Rule 306 of the Idaho Rules of Family Law procedure sets forth the procedure for setting aside a default and a default judgment. It states, "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 809." Under that rule, a party's default may be set aside for good cause shown "and, if a judgment by default has been entered," the default judgment may *likewise* be set aside in accordance with Rule 809. Thus, the default must be set aside and then the judgment by default, although motions to set aside the default and to obtain relief from the default judgment can be made simultaneously. Setting aside the judgment by default does not set aside the default, because they are two separate actions.[9]

In this case, Mother never moved to set aside the entry of default. Her motion stated:

> COMES NOW the Cross Respondent, Evelia Carrasco Carrasco, by and through her attorney of record, NATHAN D. RIVERA, and moves the Court, pursuant to the Rule 306 and Rule 809(4) of the Idaho Rules of Family Law Procedure, to set aside the *default judgment* which was entered in this matter on October 16, 2014, and that the case be reopened.

(Emphasis added.)

In *Kingsbury v. Brown*, 60 Idaho 464, 92 P.2d 1053 (1939), we wrote:

---

> accompanied by a certificate furnished by the department of vital statistics fully filled out by the party seeking the default divorce or annulment.

Rule 305 of the Idaho Rules of Family Law Procedure provides:

> In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least three (3) days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any statement by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper. In actions for divorce, the statutes of the state of Idaho shall apply. Any application for a default judgment must contain written certification of the name of the party against whom the judgment is requested and the address most likely to give the party notice of such default judgment, and the clerk shall use such address in giving such party notice of judgment.

[8] See Rule 55(a)(1) & (b) of the Idaho Rules of Civil Procedure.

[9] Rule 55(c) of the Idaho Rules of Civil Procedure is virtually identical. It provides, "The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)."

> "Upon the failure of the defendant to answer the complaint within the time allowed by law, and upon the entry of default, in the absence of fraud, the right of the defendant to participate in the litigation is terminated, and the subsequent filing of an answer or demurrer on his part is unauthorized and void, unless upon proceedings duly had, the default is first set aside."

60 Idaho at 469, 92 P.2d at 1055 (quoting *Jones v. Moers*, 266 P. 821, 822–23 (Cal. Ct. App. 1928)). We then added, "Upon the filing of the default and default judgment, May 24, 1938 respondent was out of court, and the filing of his answer, June 2, 1938, was unauthorized and void, adding nothing to his legal rights. *Jones v. Moers*, *supra*, and cases therein cited." *Id.* at 470, 92 P.2d at 1055.

One of the cases cited in *Jones v. Moers* was *Title Insurance & Trust Co. v. King Land & Improvement Co.*, 120 P. 1066 (Cal. 1912). In that case, the California Supreme Court explained that it would be ineffectual to set aside a default judgment without also setting aside the entry of default.

> A default cuts off the defendant from making any further opposition or objection to the relief which plaintiff's complaint shows he is entitled to demand. A defendant against whom a default is entered 'is out of court and is not entitled to take any further steps in the cause affecting plaintiff's right of action.' He cannot thereafter, nor until such default is set aside in a proper proceeding, file pleadings, or move for a new trial, or demand notice of subsequent proceedings. 'A default confesses all the material facts in the complaint.' Consequently, if the judgment were vacated, it would be the duty of the court immediately to render another of like effect, and the defaulting defendants would not be heard for the purpose of interposing any denial or affirmative defense.

*Id.* at 1067 (internal citations omitted).

Likewise, in *Commonwealth Trust Co. of Pittsburgh v. Lorain*, 43 Idaho 784, 255 P. 909 (1927), this Court held that the entry of default must be set aside in order to set aside a default judgment. In that case, default was entered against the defendants on June 18, 1923, in an action to foreclose two water contracts, and the judgment ordering the sale of the contracts was entered during the next term of court on February 5, 1924. *Id.* at 786, 255 P. at 909. On March 10, 1924, a successor in interest of the defendants served a motion to vacate the default and later filed the motion on March 14, 1924. *Id.* The applicable statute provided that a court could "relieve a party . . . from a judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect . . . upon application made within a reasonable time, not exceeding six months after the adjournment of the term." Idaho Comp.

Stats. § 6726 (1919). The motion to set aside the default was made more than six months after the entry of default but less than six months after the entry of the default judgment.

The issue was: "Does the period prescribed by the statute within which the motion to vacate should be made date from the entry of default or from the entry of judgment?" 43 Idaho at 787, 255 P. at 909. Relying upon the decision of the California Supreme Court in *Title Insurance & Trust Co. v. King Land & Improvement Co.*, construing identical language in a California statute, this Court held that the words "other proceeding taken against him" included the entry of default and that the time for relief from the entry of default therefore began to run from the entry of the default, not from the later entry of the judgment. *Id.* at 788, 255 P. at 910. Thus, we held that where the motion to set aside the entry of default was not timely, the judgment could not be set aside. "The setting aside of the judgment if the default must nevertheless stand would be a vain thing; it was error to set aside the judgment. (Cases cited *supra*.)" *Id.* The trial court had set aside the default and default judgment, and this Court held that "the order setting aside and vacating the judgment and default is hereby set aside and held for naught." *Id.*

In the instant case, Mother never moved to set aside the entry of default against her, and the magistrate court did not purport to set it aside. In fact, it denied her motion for relief from the judgment by default. Therefore, that would normally bar her appeal. *E. Idaho Econ. Dev. Council v. Lockwood Packaging Corp. Idaho*, 139 Idaho 492, 496, 80 P.3d 1093, 1097 (2003) ("The failure of Cross–Appellants to have the default set aside bars their appeal to this Court."). However, a party obtaining the entry of a default against an opposing party can waive the entry of default so that it is no longer of any effect, even if the trial court does not set the default aside. *Pierce v. McMullen*, 156 Idaho 465, 470, 328 P.3d 445, 450 (2014) (plaintiff waived entry of default by filing an amended complaint). In *Kingsbury* we acknowledged, "It appears to be well settled that the entry of a default against a defendant is merely a privilege which may or may not be exercised by the plaintiff and that not only may the right to a default be waived, but so may the default itself after entry." 60 Idaho at 468–69, 92 P.2d at 1054–55. Waiver requires "some act disclosing an implied or expressed intent to waive the default." *Id.* at 469, 92 P.2d at 1055. In *Kingsbury*, we stated that one such act is "where the defaulted party *is permitted without objection* to raise and try issues admitted by the default." *Id.*; *see also* 46 Am. Jur. 2d *Judgments* § 241 (2006) ("Acts which have been allowed to constitute waiver include . . . going

8

to trial on the merits.") (footnotes omitted). In this case, Father did not object to the failure of Mother to move to set aside the default, and he litigated the issues regarding her motion to modify the judgment. Therefore, the entry of default against Mother was waived, and we will address the merits of Mother's appeal.

For further guidance, under both the Idaho Rules of Civil Procedure and the Idaho Rules of Family Law Procedure, a default may be set aside for good cause shown. I.R.C.P. 55(c), I.R.F.L.P 306. Under the current rules, a party seeking relief from or to modify a judgment by default must also move to set aside the entry of default. Where a judgment by default has been entered, good cause to set aside the entry of a default exists if the defaulted party, or that party's legal representative, desires to file a motion seeking relief from a judgment pursuant to Rule 60 of the Idaho Rules of Civil Procedure or Rule 808 or 809 of the Idaho Rules of Family Law Procedure, whichever is applicable, or to commence a proceeding to modify a provision in a judgment regarding child custody, child support, or spousal maintenance pursuant to Rule 201.C of the Idaho Rules of Family Law Procedure. In those circumstances, there is good cause to set aside the entry of default regardless of whether the party had good cause to set aside the entry of default before the judgment by default was entered. This should not be read as stating that these are the only circumstances where there could be good cause to set aside a default.

## III.

### Did the Magistrate Court Abuse Its Discretion in Ordering a Change in Physical Custody Every Three Weeks?

In this case, the parties live 913 miles apart. The magistrate court ordered that the parties change physical custody of Child every three weeks. It is apparent from the court's comments that it believed that the parties should have equal time with Child regardless of the travel time involved or the impact that may have on Child.

As stated above, when the magistrate court raised the issue of temporary child custody after orally denying Mother's motion for relief from the default judgment, the court stated:

> Let me just throw out a suggestion to you. What I anticipate doing is saying that Dad will keep the child until the month of April is over, and then Mom can take the child for the month of May. And then Dad will get the child back for the month of June. So we're just going to rotate it on that basis between on that.

9

Now, that is not the best custody arrangement for this child. I understand that. But under the circumstances and the limited amount of time, it's somewhat fair to the parents—probably not fair to your child, but it's fair to the parents.

Based upon that statement by the court, the parties agreed to exchange custody every two weeks.

At the commencement of the evidentiary hearing, the court stated that it had to "figure out what we're going to do about [Child's] custody for essentially the next two years, until he starts kindergarten" and that it was the court's understanding "that Dad is going to continue to reside here in Blackfoot and Mom is going to continue to reside in Southern California." With respect to the custody arrangement until Child started kindergarten, the court stated that it would order that Child spend an equal amount of time with both parents unless one party could prove some ground related to parental unfitness to have the court order some other custody arrangement. The court stated:

> Between now and then, there's no reason the child shouldn't spend about half of his time with Mom and half of his time with Dad for the next two years.
>
> So as we start this hearing, what I'm trying to figure out is is that going to be one-week/one-week? Is it going to be two-weeks/two-weeks? Is it going to be three weeks with Mom and then three weeks with Dad? Or is it going to be four weeks with Mom and four weeks with Dad?
>
> So as we start this hearing, if you attorneys think you've got some evidence that would move me off of that track, you're certainly entitled to it. For example, if Mom can prove to me that Dad is a serious drug abuser, he's in and out of jail because he violates the law often, he's a serious alcoholic and can't parent because of that, then I would move off of that split custody arrangement.
>
> And likewise, if Dad can prove to me that Mom has serious problems—for example, if she were an active prostitute, that would not be a good environment for the child, or if Mom had the alcohol or drug problem as I indicated like Dad might have.

Mother testified first. After the parties' counsel had questioned her, the magistrate court likewise questioned her. During its questioning, the court asked:

> Q. And if I divide the custody on a 50/50 basis, do you want to have one-week/one-week? Two-weeks/two-weeks? Three-weeks/three-weeks? Four-weeks/four-weeks? Do you have a preference?

Mother responded with her concerns of driving very far with two children in the car, particularly if she had a flat tire, and of driving on Sundays because of how congested the traffic was. The court asked if Saturday would be better, and Mother stated: "He doesn't have to pay child

10

support. I'll pay for the gas, please." The court then said: "One-week/one-week? Two-weeks/two-weeks? Three-weeks/three-weeks? Four-weeks/four-weeks?" Mother answered by saying she would leave it up to Father. Father then testified, and stated that he would like a custody arrangement where each parent had Child half the time, with physical custody changing every three weeks.

After the evidence was presented, the magistrate court stated that it was "not really hung up on a 50 percent shared custody," but in context that was if the parties could agree on a custody arrangement other than them each having equal time with Child. The court then stated that if custody changed every week, they would have to travel 52 times a year; if it changed every two weeks, they would have to travel 26 times a year; and if it changed every three weeks, they would have to travel 17 times a year. Another option stated by the court was that each parent could have physical custody for six months, with the other having a two-week visit in each quarter.

During counsel's closing arguments, Mother's counsel argued for Mother to have primary physical custody of Child, with Father having extended visits during holidays and spring break and for the majority of the summer. Mother's counsel stated that if the court rejected such a custody arrangement, then Mother would prefer physical custody changing every three weeks. Father's counsel argued for exchanging physical custody every third Sunday in St. George, Utah, with Child seeing both parents on Christmas. The magistrate court ordered that the parties change physical custody every three weeks.

The welfare and best interest of the child is of paramount importance when awarding custody. *Brownson v. Allen*, 134 Idaho 60, 62, 995 P.2d 830, 832. (2000); I.C. § 32-717. Decisions as to the custody, care, and education of the child are committed to the sound discretion of the trial court, *Osteraas v. Osteraas*, 124 Idaho 350, 352, 859 P.2d 948, 950 (1993), and they will be upheld on appeal unless there is a clear showing of abuse of that discretion, *Ratliff v. Ratliff*, 129 Idaho 422, 424, 925 P.2d 1121, 1123 (1996). When reviewing the trial court's exercise of discretion, this Court inquires: (1) whether the trial court rightly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the trial court reached its decision by an exercise of reason. *Brownson v. Allen*, 134 Idaho 60, 63, 995 P.2d 830, 833 (2000).

11

Idaho Code section 32-717 sets forth a non-exhaustive list of factors for the court to consider when deciding what custody arrangement would be in the best interests of a child. *King v. King*, 137 Idaho 438, 444, 50 P.3d 453, 459 (2002). The statute also provides that the court "shall consider all relevant factors." In this case, the magistrate court addressed the factors listed in section 32-717, but it did not address the distance that the child must travel to exchange custody, which is clearly a relevant factor in this case.

Idaho Code section 32-717B(2) states:

> Joint physical custody shall be shared by the parents in such a way to assure the child a frequent and continuing contact with both parents but does not necessarily mean the child's time with each parent should be exactly the same in length nor does it necessarily mean the child should be alternating back and forth over certain periods of time between each parent.
> The actual amount of time with each parent shall be determined by the court.

The statute does not mandate equal time with each parent or alternating physical custody back and forth. However, it is obvious from the court's statements quoted above that it based its custody decision solely on its belief that the parties must share physical custody equally, regardless of the distance that they must travel in order to exchange custody.

In *State v. Hart*, 142 Idaho 721, 132 P.3d 1249 (2006), we upheld a two-week custody rotation where the father lived in Pocatello, Idaho, and the mother lived in Laramie, Wyoming, *id*. at 723, 132 P.3d at 1251, which required driving about 453 miles one way. We stated:

> Doubtless the splitting of custody in the fashion done by the trial court creates issues. Uprooting a child every two weeks to travel and live in alternating locations with alternating people raises serious concerns as to the welfare of the child. However, there is evidence in the record from Dr. Corgiat [an expert witness] supporting the decision. The trial court did not abuse its discretion when it ordered equal joint physical custody between Heather and Jacob.

*Id*. at 725, 132 P.3d at 1253.

The distance traveled in *State v. Hart* for the two-week custody rotation was certainly at the outer limit that would ordinarily be reasonable for such type of child custody rotation. In the instant case, the distance to be traveled in order to exchange physical custody every three weeks is over twice that in *State v. Hart*, and there was no expert testimony in this case regarding the impact that would have on Child. The magistrate court abused its discretion in ordering that

12

physical custody be exchanged every three weeks.  We therefore vacate the provisions in the judgment regarding physical custody.

## IV.

## Did the Magistrate Court Err in Ordering the Amount of Child Support to Be Paid by Mother?

At the time of the evidentiary hearing, Mother was unemployed and was receiving public assistance.  She testified that she had been working at a restaurant where she was paid in cash, but she lost that job because of missing work to come to Idaho in connection with this case and had not found another job.  She also testified that she does not have a social security number, and her immigration lawyer told her not to work, apparently until she can obtain a social security number.

In calculating child support, the magistrate court listed Mother's income as $15,080.00.  The court did not explain the derivation of that figure, but both parties agree that such income was based upon working at the minimum wage for forty hours per week.  The Idaho Child Support Guidelines provide, "If a parent is voluntarily unemployed or underemployed, child support shall be based on gross potential income . . . ."  I.R.F.L.P Rule 126.F.3.a.  There was no finding by the magistrate court that Mother was voluntarily unemployed or underemployed.  Therefore, the court erred in holding that Mother's potential income was $15,080.00.

In its judgment, the magistrate court ruled that "[n]either party shall pay child support to the other."  The court determined that Mother's obligation was $145.59 per month and Father's obligation was $328.18, based upon his actual income and her potential income.  The court then offset those two amounts and held that Father should not be required to pay Mother the difference because of his expense and time in facilitating custody exchanges, although no evidence was offered as to such expense and time.  Because of the magistrate court's error in attributing potential income to Mother, we must vacate that part of the judgment holding that neither party shall pay child support to the other.

The judgment also provided, "Each parent shall pay half of any uncovered medical expenses of [Child] and each parent will provide health insurance for [Child] if available at a reasonable cost."  With respect to health insurance for a minor child, the Child Support Guidelines provide, "Such health insurance should normally be provided by the parent that can

13

obtain suitable coverage through an employer at the lower cost." I.R.F.L.P Rule 126.H.4.a. The magistrate court's judgment requires each parent to provide health insurance for Child if it is available at a reasonable cost, which could result in there being two health insurance policies covering Child. The court did not explain why it chose to deviate from the guidelines. The Guidelines also provide that "The actual cost paid by either parent for health insurance premiums or for health care expenses for the children not covered or paid in full by insurance . . . shall be prorated between the parents in proportion to their Guidelines Income." *Id*. The magistrate court erred in ordering that the uncovered medical expenses be shared equally, rather than in proportion to their Guidelines Income. Therefore, we also vacate the provisions in the judgment regarding child support, health insurance for Child, and the proration of Child's health care expenses that are not covered or paid in full by insurance.

## V.

### Should this Court Order a New Trial on Remand?

Mother requests that we order a new trial on remand. We decline to do so. Instead, we order that this case be assigned to a different judge on remand, and the new judge can make a determination as to whether to have a new trial or take additional evidence.

## VI.

### Is Father Entitled to an Award of Attorney Fees on Appeal?

Father requests an award of attorney fees on appeal pursuant to Idaho Code section 12-121. In order to be eligible for an award of attorney fees under that statute, the party must be the prevailing party on appeal. *Armand v. Opportunity Mgmt. Co., Inc*., 155 Idaho 592, 602, 315 P.3d 245, 255 (2013). Because Father is not the prevailing party on appeal, he cannot be awarded attorney fees under that statute.

## VII.

### Conclusion.

We vacate the provisions of the magistrate court's judgment regarding child custody, child support, health insurance for Child, and the proration of Child's health care expenses that are not covered or paid in full by insurance. We remand this case for appointment of another

judge and for further proceedings that are in accordance with this opinion.  We award costs on appeal to Mother.

Chief Justice BURDICK, and Justices JONES, HORTON and BRODY **CONCUR.**